# Composite Exhibit "A"

# REVOLVING PROMISSORY NOTE

Miami Florida
U.S. $2,000,000.00 March 10, 2022

1. Parties.

1.1 FORENSIC STAT LABORATORY, INC. A FLORIDA CORPORATION ("the "Borrower").

1.2 UBANK, A TEXAS BANKING CORPORATION (the "Lender").

2. Borrower' Promise to Pay. For value received, Borrower promise to pay to the order of Lender, its successors or assigns, amounts advanced as per Section 3 below, which in the aggregate shall not exceed TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) (the "Principal"), plus interest (the "Interest") on the Principal from time to time remaining unpaid.

3. Advances. The loan evidenced by this Note is a revolving loan such that Borrower may borrow, repay, re-borrow and repay the outstanding Principal balance during the term of this Note, subject to the provisions contained herein and subject to all of the terms, conditions and limitations contained in the Credit Agreement (as defined in Section 8 hereof), provided that (i) the Principal balance does not at any one time exceed the amount of $2,000,000.00 and (ii) no default shall have occurred and no condition shall exist which with the giving of notice, passage of time, or both, would constitute a default.

4. Interest Rate.

4.1 Provided no default shall have occurred on this Note, Interest shall be payable on the outstanding Principal at an annual rate equal to (2.74%) over the "Prime Rate" (as herein defined) (the "Applicable Interest Rate") for the period commencing on the date of this Note and continuing until the Maturity Date (as defined hereinafter) and the Applicable Interest Rate shall never be less than 5.99%.

4.2 The term "Prime Rate" shall mean the annual rate of interest, published from time to time by The Wall Street Journal as its prime rate of interest so identified in the Money Rates Column of The Wall Street Journal, subject to change on a daily basis. Should The Wall Street Journal not publish a prime rate during the term of this Note, Lender, in its reasonable discretion, may choose a substitute prime rate. The Applicable Interest Rate shall change each time the Prime Rate is changed. Any such change in the Applicable Interest Rate shall become effective as of the opening of business on the day in which such change in the Prime Rate is made generally effective by Lender. A certificate executed and acknowledged by any officer of Lender shall be conclusive of the Prime Rate.

4.3 Notwithstanding anything contained in this Note to the contrary, upon default in this Note, Interest shall be payable at the annual rate equal to the lesser of (i) the highest rate permitted by law or (ii) eighteen percent (18%) (the "Default Rate"). In accordance with

Section 55.03(1), Florida Statutes (2015), the Default Rate shall be applicable to interest accruing on any judgment entered with respect to the indebtedness evidenced hereby or by any of the other Loan Documents (as such term is hereafter defined).

5. Payments.

5.1 Borrower shall pay monthly Interest payments in arrears commencing on the 10th day of April 2022, and continuing on the 10th day of each and every month thereafter until the Maturity Date.

5.2 The entire unpaid Principal and any accumulated unpaid Interest thereon shall be due and payable on the 10th day of March 2023 (the "Maturity Date").

5.3 Interest under this Note will be computed on the basis of a 360-day year consisting of 12 months of 30 days each.

5.4 All payments hereunder shall be made in lawful money of the United States of America.

5.5 In the event that the Interest Rate or the Default Rate exceeds the maximum rate of interest allowed by applicable law, as amended from time to time, in any interest period during the initial term or any extension of this Note, only the maximum rate of interest allowed shall then be charged but thereafter in any interest period or periods during which the rate is less than the maximum rate allowed by applicable law, as amended from time to time, the Interest Rate and the Default Rate shall be increased so that Lender, its successors or assigns, may collect interest in such amount as may have been charged pursuant to the terms of this Note, but which was not charged because of the limitation imposed by law.

5.6 It is the intent of the parties hereto that in no event shall the amount of interest due or payment in the nature of interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by Borrower or received by Lender, then such excess sum shall be credited as a payment of Principal, unless Borrower shall notify Lender, in writing, that Borrower elect to have such excess sum returned to them forthwith. Lender may, in determining the maximum rate of interest allowed under applicable law, as amended from time to time, take advantage of: (i) the rate of interest permitted by Section 655.56, Florida Statutes, by reason of both Section 687.12 Florida Statutes ("Interest rates; parity among licensed lenders or creditors") and 12 United States Code, Sections 85 and 86, and (ii) any other law, rule, or regulation in effect from time to time, available to Lender which exempts Lender from any limit upon the rate of interest it may charge or grants to Lender the right to charge a higher rate of interest than that allowed by Florida Statutes, Chapter 687.

6. Application of Payments. So long as no Event of Default (as defined in the Credit Agreement) has occurred and is continuing, all payments hereunder shall first be applied to Interest, then to Principal. During the continuance of an Event of Default, all payments hereunder shall first be applied to costs pursuant to Section 11.2, then to Interest and the remainder to Principal.

7. Prepayment. This Note may be prepaid in whole or in part without penalty. Any prepayment shall be accompanied by an amount equal to the interest accrued thereon to the date of receipt of such prepayment in collected funds.

8. Other Instruments. The term "Loan Documents" shall mean all and any of the documents now or hereafter executed by Borrower, by others, or by Borrower and others, in favor of Lender, which wholly or partly secure or are executed in connection with this Note, including, but not limited to (i) that certain Credit Agreement (the "Credit Agreement") dated of even date herewith, between Borrower and Lender, and (ii) UCC-1 Financing Statements (a) from Borrower, as debtor, in favor of Lender, as secured party, to be recorded in the Public Records of Miami Dade County, Florida, and (c) from Borrower, as debtor, in favor of Lender, as secured party, to be filed with the Florida Secured Transactions Registry. Reference is made to the provisions of the Loan Documents for a description of the further rights of Lender.

9. Place of Payment. All payments hereunder shall be made at Lender's offices 6120 S. Broadway Avenue, Tyler TX 75703, or such other place as Lender may from time to time designate in writing.

10. Default. If any payment of Principal, Interest, or other sum due Lender hereunder or under any of the Loan Documents is not paid within ten (10) days of when it becomes due, or if any other default occurs under any of the Loan Documents or if any obligation of Borrower under any of the Loan Documents is not fully performed prior to the expiration of any applicable grace, cure or notice periods, if any, then this Note shall be in default.

11. Default Remedies.

11.1 Upon default in this Note, Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand.

11.2 In addition to payments of Interest and Principal, if there is a default in this Note Lender shall be entitled to recover from Borrower all of Lender's costs of collection, including Lender's attorneys' fees, (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals, or otherwise), and all other costs incurred in connection therewith. Any judgment rendered on this Note shall bear interest at the highest rate of interest permitted pursuant to Florida Statutes, Chapter 687.

12. Waivers. Borrower and any endorsers, sureties, guarantors, and all others who are, or may become liable for the payment hereof severally: (a) waive presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, (b) consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after the Maturity Date, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing, (c) agree to any substitution, exchange, addition, or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon, (d) agree that Lender shall

not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note and (e) agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Lender of any such person), the undersigned shall be and remain, jointly and severally directly and primarily liable for all sums due under this Note.

13.2 Set-Offs. Borrower and any endorsers, sureties, guarantors, and all others who are, or who may become liable for the payment hereof, severally expressly grant to Lender a continuing first priority security interest in and authorize and empower Lender, at its sole discretion, at any time after the occurrence of a default hereunder to appropriate and, in such order as Lender may elect, apply to the payment hereof or to the payment of any and all indebtedness, liabilities and obligations of such parties to Lender or any of Lender's affiliates, whether now existing or hereafter created or arising or now owned or howsoever after acquired by Lender or any of Lender's affiliates (whether such indebtedness, liabilities and obligations are or will be joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, matured or unmatured, including, but not limited to, any letter of credit issued by Lender for the account of any such parties), any and all money, general or specific deposits, or collateral of any such parties now or hereafter in the possession of Lender.

13. Submission to Jurisdiction. Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become, liable for the payment hereof severally, irrevocably and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Note may be brought, in a court of record of the State of Florida in Miami-Dade in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction; (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

14. Miscellaneous Provisions.

14.1 The term Lender as used herein shall mean any holder of this Note.

14.2 Time is of the essence in this Note.

14.3 The captions of sections of this Note are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Note.

14.4 This Note shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

14.5 If any provision or portion of this Note is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Note, and the remaining provisions and portions thereof shall continue in full force and effect.

14.6 This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized officer of Lender. Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

15. Waiver of Trial by Jury. BORROWERS AND LENDER (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWERS AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

PROPER DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,450.00 HAVE BEEN PAID ON THIS NOTE BY LENDER DIRECTLY TO THE FLORIDA DEPARTMENT OF REVENUE.

[Signature appears on following page]

FORENSIC STAT LABORATORY, INC. A FLORIDA CORPORATION

By: ______________________
Madukar Sharma
CEO

STATE OF FLORIDA )
) SS:
COUNTY OF MIAMI-DADE)

The foregoing instrument was acknowledged before me this 14th day of March 2022 by Madukar Sharma as CEO of FORENSIC STAT LABORATORY, INC. A FLORIDA CORPORATION, on behalf of the corporation.

Personally Known _________ OR Produced Identification ✗

Type of Identification Produced [redacted]-249-0

______________________
Signing as Notary Public and not as a maker or endorser of this Note
Print or Stamp Name: Beverly L. Pateman
Notary Public, State of Florida at Large
Commission No.: HH 004712
My Commission Expires: 5/28/24

Notary Public State of Florida
Beverly L Pateman
My Commission HH 004712
Expires 05/28/2024

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| [redacted]4137 | Forensic Stat Laboratory, Inc. | 0 | 03/10/23 | KCJ |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $2,000,000.00 | Wall Street Journal Prime plus 1.500% | 9.250% | 06/10/23 | Commercial |
| | | **Creditor Use Only** | | |

# PROMISSORY NOTE

(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is March 10, 2023. The parties and their addresses are:

**LENDER:**
**UBANK**
6120 S Broadway Ave
Tyler, TX 75703
Telephone: (903) 597-2722

**BORROWER:**
**FORENSIC STAT LABORATORY, INC.**
a Florida Corporation
7522 Wiles Road B211
Coral Springs, FL 33067

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| March 10, 2022 | # [redacted]4137 | $2,000,000.00 |

The remaining balance of the note listed in the table above is $2,043,833.33.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the lesser of the aggregate unpaid amounts advanced from time to time under the terms of this Note or **$2,000,000.00 (Principal)** plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

All advances made will be made subject to all other terms and conditions of the Loan.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **9.250 percent (Interest Rate)** until March 11, 2023, after which time it may change as described in the Variable Rate subsection.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. The maximum interest rate producing the maximum lawful amount will be the quarterly ceiling rate announced by the Credit Commissioner from time to time hereafter.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Texas usury laws under Tex. Fin. Code, Ch. 303. The provisions of Tex. Fin. Code, Ch. 346 do not apply to this Note.

**D. Accrual.** Other than any odd first period, interest will accrue using a counting days method that assumes equal intervals between scheduled payments.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

**(1)** Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (the "Benchmark").

DS MS

The Benchmark is the most recent index value available as of 25 days before each Change Date. You do not guaranty by selecting this Benchmark, or the Margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, I agree and consent to you selecting a substitute Benchmark and an alternative Margin - all at your sole discretion. You will give me advance notice of your selection. As used in this subsection, "no longer available" includes, but is not limited to, when a Benchmark is terminated, becomes deregulated, or becomes unacceptable for use by a regulator.

If the Benchmark is deemed to be no longer available it will be replaced if any of the following events (each, a "Replacement Event") occur: (i) the administrator, including any successor administrator of the Benchmark, has stopped providing the Benchmark to the general public; (ii) the administrator or its regulator issues a public statement indicating that the Benchmark is no longer reliable or representative; or (iii) the effective date of an applicable federal or state law, or applicable federal or state regulation that prohibits use of the Benchmark. If a Replacement Event occurs, you will select a new benchmark (the "Replacement Benchmark") and may also select a new margin (the "Replacement Margin"), as follows:

(a) If a replacement benchmark and margin has been selected or recommended by the Federal Reserve Board, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Federal Reserve Board or the Federal Reserve Bank of New York at the time of a Replacement Event, you shall select that benchmark and margin as the Replacement Benchmark and Replacement Margin.

(b) If (a) is not available at the time of a Replacement Event, you will make a reasonable, good faith effort to select a Replacement Benchmark and a Replacement Margin that, when added together, you reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Benchmark and the Replacement Benchmark.

The Replacement Benchmark and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine the interest rate and payments on Change Dates that are more than 0 days after a Replacement Event. The Benchmark and Margin could be replaced more than once during the term of the Note. After a Replacement Event, all references to the "Benchmark" and "Margin" shall be deemed to be references to the "Replacement Benchmark" and "Replacement Margin." You will also give me notice of the Replacement Benchmark and Replacement Margin, if any, and such other information required by applicable law and regulation.

**(2)** Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change March 11, 2023 and daily thereafter.

**(3)** Calculation Of Change. Before each Change Date you will calculate the Interest Rate, which will be the Benchmark plus 1.500 percent (the "Margin"). The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

**(4)** Limitations. The Interest Rate changes are subject to the following limitations:

**(a)** Lifetime. The Interest Rate will never be greater than 18.000 percent or less than 9.250 percent.

**(5)** Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than **10** days late, I will be charged **5.000** percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**B. Returned Payment Charge.** I agree to pay a fee not to exceed $10.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**7. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**8. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning April 10, 2023, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due June 10, 2023.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is Extension RLOW for working Capital.

**11. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Security Agreement - Forensic Stat Laboratory, Inc. | Forensic Stat Laboratory, Inc. | Of Even Date |

DS
MS
Initials

**12. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Line of Credit, is void and ineffective as to this Line of Credit, including any extension or refinancing.

The Line of Credit is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**14. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.**

**A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.**

**(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.**

**(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.**

**(3) You may release, substitute or impair any Property securing this Note.**

**(4) You, or any institution participating in this Note, may invoke your right of set-off.**

**(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.**

**(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.**

**(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.**

**B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.**

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. APPLICABLE LAW.** This Note is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**17. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**23. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Forensic Stat Laboratory, Inc.

DocuSigned by:
Madhukar Sharma
By B09DAFEC71E9461... Date 4/26/2023
Madhukar Sharma, President

**LENDER:**

UBank

By______________________________ Date____________
Kristi Johnston, VP Commercial Lender

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Processing Fee.** A(n) Processing Fee fee of $75.00 payable from separate funds on or before today's date.

DS
MS


Wolters Kluwer Financial Services, Inc.©1996, 2023 Bankers Systems™

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| [redacted]4137 | Forensic Stat Laboratory, Inc. | 0 | 08/10/23 | KCJ |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $2,000,000.00 | Wall Street Journal Prime plus 1.500% | 10.000% | 11/10/23 | Commercial |
| | | **Creditor Use Only** | | |

# PROMISSORY NOTE

(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is August 10, 2023. The parties and their addresses are:

**LENDER:**
**UBANK**
6120 S Broadway Ave
Tyler, TX 75703
Telephone: (903) 597-2722

**BORROWER:**
**FORENSIC STAT LABORATORY, INC.**
a Florida Corporation
8849 Canterbury Cove Court
Jacksonville, FL 32256

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| June 10, 2023 | #[redacted]4137 | $2,000,000.00 |

The remaining balance of the note listed in the table above is $2,024,444.44.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the lesser of the aggregate unpaid amounts advanced from time to time under the terms of this Note or **$2,000,000.00 (Principal)** plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

All advances made will be made subject to all other terms and conditions of the Loan.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **10.000 percent (Interest Rate)** until August 11, 2023, after which time it may change as described in the Variable Rate subsection.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. The maximum interest rate producing the maximum lawful amount will be the quarterly ceiling rate announced by the Credit Commissioner from time to time hereafter.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Texas usury laws under Tex. Fin. Code, Ch. 303. The provisions of Tex. Fin. Code, Ch. 346 do not apply to this Note.

**D. Accrual.** Other than any odd first period, interest will accrue using a counting days method that assumes equal intervals between scheduled payments.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

**(1)** Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (the "Benchmark").

DS SM
Initials

The Benchmark is the most recent index value available on each Change Date. You do not guaranty by selecting this Benchmark, or the Margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, I agree and consent to you selecting a substitute Benchmark and an alternative Margin - all at your sole discretion. You will give me advance notice of your selection. As used in this subsection, "no longer available" includes, but is not limited to, when a Benchmark is terminated, becomes deregulated, or becomes unacceptable for use by a regulator.

If the Benchmark is deemed to be no longer available it will be replaced if any of the following events (each, a "Replacement Event") occur: (i) the administrator, including any successor administrator of the Benchmark, has stopped providing the Benchmark to the general public; (ii) the administrator or its regulator issues a public statement indicating that the Benchmark is no longer reliable or representative; or (iii) the effective date of an applicable federal or state law, or applicable federal or state regulation that prohibits use of the Benchmark. If a Replacement Event occurs, you will select a new benchmark (the "Replacement Benchmark") and may also select a new margin (the "Replacement Margin"), as follows:

(a) If a replacement benchmark and margin has been selected or recommended by the Federal Reserve Board, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Federal Reserve Board or the Federal Reserve Bank of New York at the time of a Replacement Event, you shall select that benchmark and margin as the Replacement Benchmark and Replacement Margin.

(b) If (a) is not available at the time of a Replacement Event, you will make a reasonable, good faith effort to select a Replacement Benchmark and a Replacement Margin that, when added together, you reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Benchmark and the Replacement Benchmark.

The Replacement Benchmark and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine the interest rate and payments on Change Dates that are more than 0 days after a Replacement Event. The Benchmark and Margin could be replaced more than once during the term of the Note. After a Replacement Event, all references to the "Benchmark" and "Margin" shall be deemed to be references to the "Replacement Benchmark" and "Replacement Margin." You will also give me notice of the Replacement Benchmark and Replacement Margin, if any, and such other information required by applicable law and regulation.

**(2)** Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change August 11, 2023 and daily thereafter.

**(3)** Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Benchmark plus 1.500 percent (the "Margin"). The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

**(4)** Limitations. The Interest Rate changes are subject to the following limitations:

**(a)** Lifetime. The Interest Rate will never be greater than 18.000 percent or less than 10.000 percent.

**(5)** Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than **10** days late, I will be charged **5.000** percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**B. Returned Payment Charge.** I agree to pay a fee not to exceed $10.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**7. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**8. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning September 10, 2023, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due November 10, 2023.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is Extension RLOC for Working Capital.

**11. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Security Agreement - Forensic Stat Laboratory, Inc. | Forensic Stat Laboratory, Inc. | Of Even Date |

DS
SM
Initials

and by the following, previously executed, security instruments or agreements: Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2022
Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2023
.

**12. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Line of Credit, is void and ineffective as to this Line of Credit, including any extension or refinancing.

The Line of Credit is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**14. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.**

**A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.**

**(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.**

**(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.**

**(3) You may release, substitute or impair any Property securing this Note.**

**(4) You, or any institution participating in this Note, may invoke your right of set-off.**

**(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.**

**(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.**

**(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.**

**B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.**

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. APPLICABLE LAW.** This Note is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**17. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**23. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Forensic Stat Laboratory, Inc.

DocuSigned by: Sharma Madhukar B09DAFEC71E9461...

By______________________ Date 9/22/2023

Madhukar Sharma, President

**LENDER:**

UBank

By______________________ Date 5-30-25

~~Kristi Johnston~~, VP Commercial Lender

Jesus Mendoza

## APPENDIX: FEES AND CHARGES

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Florida Documentary Stamp Tax.** A(n) Florida Documentary Stamp Tax fee of $2,450.00 payable from separate funds on or before today's date.
**Origination Fee.** A(n) Origination Fee fee of $5,000.00 payable from separate funds on or before today's date.
**Processing Fee.** A(n) Processing Fee fee of $400.00 payable from separate funds on or before today's date.

DS
SM


Wolters Kluwer Financial Services, Inc.©1996, 2023 Bankers Systems™

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| [redacted]4137 | Forensic Stat Laboratory, Inc. | 0 | 11/10/23 | KCJ |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $2,000,000.00 | Wall Street Journal Prime plus 1.500% | 10.000% | 01/10/24 | Commercial |
| | | **Creditor Use Only** | | |

# PROMISSORY NOTE

(Commercial - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is November 10, 2023. The parties and their addresses are:

**LENDER:**
**UBANK**
6120 S Broadway Ave
Tyler, TX 75703
Telephone: (903) 597-2722

**BORROWER:**
**FORENSIC STAT LABORATORY, INC.**
a Florida Corporation
8849 Canterbury Cove Court
Jacksonville, FL 32256

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| August 10, 2023 | # [redacted]4137 | $2,000,000.00 |

The remaining balance of the note listed in the table above is $2,049,444.44.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of **$2,000,000.00 (Principal),** plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

All advances made will be made subject to all other terms and conditions of the Loan.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **10.000 percent (Interest Rate)** until November 11, 2023, after which time it may change as described in the Variable Rate subsection.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me. The maximum interest rate producing the maximum lawful amount will be the quarterly ceiling rate announced by the Credit Commissioner from time to time hereafter.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Texas usury laws under Tex. Fin. Code, Ch. 303. The provisions of Tex. Fin. Code, Ch. 346 do not apply to this Note.

**D. Accrual.** Other than any odd first period, interest will accrue using a counting days method that assumes equal intervals between scheduled payments.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

**(1)** Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (the "Benchmark").

The Benchmark is the most recent index value available on each Change Date. You do not guaranty by selecting this Benchmark, or the Margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, I agree and consent to you selecting a substitute Benchmark and an alternative Margin - all at your sole discretion. You will give me advance notice of your selection. As used in this subsection, "no longer available" includes, but is not limited to, when a Benchmark is terminated, becomes deregulated, or becomes unacceptable for use by a regulator.

If the Benchmark is deemed to be no longer available it will be replaced if any of the following events (each, a "Replacement Event") occur: (i) the administrator, including any successor administrator of the Benchmark, has stopped providing the Benchmark to the general public; (ii) the administrator or its regulator issues a public statement indicating that the Benchmark is no longer reliable or representative; or (iii) the effective date of an applicable federal or state law, or applicable federal or state regulation that prohibits use of the Benchmark. If a Replacement Event occurs, you will select a new benchmark (the "Replacement Benchmark") and may also select a new margin (the "Replacement Margin"), as follows:

(a) If a replacement benchmark and margin has been selected or recommended by the Federal Reserve Board, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Federal Reserve Board or the Federal Reserve Bank of New York at the time of a Replacement Event, you shall select that benchmark and margin as the Replacement Benchmark and Replacement Margin.

(b) If (a) is not available at the time of a Replacement Event, you will make a reasonable, good faith effort to select a Replacement Benchmark and a Replacement Margin that, when added together, you reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Benchmark and the Replacement Benchmark.

The Replacement Benchmark and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine the interest rate and payments on Change Dates that are more than 0 days after a Replacement Event. The Benchmark and Margin could be replaced more than once during the term of the Note. After a Replacement Event, all references to the "Benchmark" and "Margin" shall be deemed to be references to the "Replacement Benchmark" and "Replacement Margin." You will also give me notice of the Replacement Benchmark and Replacement Margin, if any, and such other information required by applicable law and regulation.

**(2)** Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change November 11, 2023 and daily thereafter.

**(3)** Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Benchmark plus 1.500 percent (the "Margin"). The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

**(4)** Limitations. The Interest Rate changes are subject to the following limitations:

**(a)** Lifetime. The Interest Rate will never be greater than 18.000 percent or less than 10.000 percent.

**(5)** Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than **10** days late, I will be charged **5.000** percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**B. Returned Payment Charge.** I agree to pay a fee not to exceed $10.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**7. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**8. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning December 10, 2023, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due January 10, 2024.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges.

If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is Extension RLOC for Working Capital.

**11. SECURITY.** The Loan is secured by the following, previously executed, security instrument(s) or agreement(s): Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2022
Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2023
.

**12. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Line of Credit, is void and ineffective as to this Line of Credit, including any extension or refinancing.

The Line of Credit is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal

law governing unfair and deceptive credit practices. The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**14. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.**

**A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.**

**(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.**

**(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.**

**(3) You may release, substitute or impair any Property securing this Note.**

**(4) You, or any institution participating in this Note, may invoke your right of set-off.**

**(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.**

**(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.**

**(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.**

**B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.**

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. APPLICABLE LAW.** This Note is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**17. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**23. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Forensic Stat Laboratory, Inc.

DocuSigned by:
By Madhukar Sharma Date 12/29/2023
Madhukar Sharma, Member

**LENDER:**

UBank

DocuSigned by:
By Kristi Johnston Date 12/29/2023
Kristi Johnston, VP Commercial Lender

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Florida Documentary Stamp Tax.** A(n) Florida Documentary Stamp Tax fee of $2,450.00 payable from separate funds on or before today's date.