# **Composite Exhibit "B"**

| | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | CREDIT LIMIT | MATURITY DATE |
|---|---|---|---|---|---|
| PRIOR OBLIGATION INFORMATION | ☒4137 | | 03/10/22 | $2,000,000.00 | 06/10/23 |

| | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | CREDIT LIMIT |
|---|---|---|---|---|
| | ☒4137 | 0 | June 10, 2023 | $2,000,000.00 |
| AMENDED OBLIGATION INFORMATION | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 08/10/23 | Wall Street Journal Prime plus 1.500% | 9.750% | KCJ |

Creditor Use Only

# DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is June 10, 2023. The parties and their addresses are:

**LENDER:**
   **UBANK**
   6120 S Broadway Ave
   Tyler, TX 75703
   Telephone: (903) 597-2722

**BORROWER:**
   **FORENSIC STAT LABORATORY, INC.**
   a Florida Corporation
   7522 Wiles Road B211
   Coral Springs, FL 33067

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

**B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

**C. Credit Limit.** Credit Limit means the maximum amount of principal you will permit me to owe you under this Line of Credit, at any one time. My Credit Limit is stated at the top of this Modification.

**D. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

**E. Modification.** Modification refers to this Debt Modification Agreement.

**F. Prior Obligation.** Prior Obligation refers to my original agreement described above in the PRIOR OBLIGATION INFORMATION section, and any subsequent extensions, renewals, modifications or substitutions of it.


Initials

Forensic Stat Laboratory, Inc.
Debt Modification Agreement
TX/4XXABRANN0000000002973012N                Wolters Kluwer Financial Services, Inc.©1996, 2023 Bankers Systems™                Page 1

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $2,009,208.34. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

**3. CONTINUATION OF TERMS.** I agree and understand that all other terms and provisions in the Prior Obligation survive and continue in full force and effect, except to the extent that they are specifically and expressly amended by this Modification. The express amendment of a term does not amend related or other terms - even if the related or other terms are contained in the same section or paragraph of the Prior Obligation. For illustration purposes only, a modification of the interest rate to be paid during the term of the loan would not modify the default rate of interest even though both of those terms are described in the Prior Obligation in a common section titled "Interest". The term "Prior Obligation" includes the original instrument and any modifications prior to this Modification.

**4. TERMS.** The Prior Obligation is modified as follows:

   **A. Maturity and Payments.** The maturity and payment provisions are modified to read:

     **(1) PAYMENT.** I agree to pay the Loan on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning July 10, 2023, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due August 10, 2023.

     Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

     **(2) Maturity.** The maturity provision is modified to read:

        **(a) Maturity Date.** Consistent with our existing periodic payment arrangement, except any scheduled, final payment, I agree that the entire outstanding balance of Principal and accrued interest is due on, or before, August 10, 2023.

   **B. Security.** The security provision is modified to read:

     **(1)** Existing Collateral Added. The following previously executed security instruments or agreements are added as security for the Amended Obligation: Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2022
Security Agreement between Forensic Stat Laboratory Inc. and UBank dated March 10, 2023
.

   **C. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

     **(1)** Nonrefundable Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

        Florida Document Stamp Tax. A(n) Florida Document Stamp Tax fee of $2,450.00 payable from separate funds on or before today's date.
Processing Fee. A(n) Processing Fee fee of $75.00 payable from separate funds on or before today's date.

     **(2)** Late Charge. If a payment is more than **10** days late, I will be charged **5.000** percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

     **(3)** Returned Payment Charge. I agree to pay a fee not to exceed $10.00 for each check, electronic payment, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.** 60 day extension

**7. ADDITIONAL TERMS.** Borrowing Base and Accounts Receivable Report due Monthly from Borrower
DDA to be maintained for the life of the loan
For consideration of renewal, upon maturity, the RLOC must show a minimum principal reduction of 75% within the 12 month loan term.
Reserve Account: A payment reserve account is to be maintained with UBank to hold a minimum of 10% of loan balance

($150,000) in capital reserves during the term of
the loan. The balance requirement may be cumulative and maintained in multiple accounts between the borrowing entity and the guarantor individually. In the event any
funds from the Reserve Account are used, they will be replaced by Borrower within 30 days of use to maintain a balance of 10% of loan balance at all times. Account to be opened within 90 days of closing

Advance Rate on A/R's to be limited to 70% of A/R's under 90 days. Eligible A/R's include all A/R's under 90 days, no progress payments. No affiliated or any company
accounts receivables will be eligible.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**8. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

**BORROWER:**

Forensic Stat Laboratory, Inc.

By _____*Madhukar Sharma*_____ (DocuSigned by: B09DAFEC71E9481...)
Madhukar Sharma, President

Date __6/22/2023_____

**LENDER:**

UBank

By_____
Kristi Johnston, VP Commercial Lender

Date _____



**ACKNOWLEDGMENT AND CONSENT BY GUARANTOR.**

I agree to the terms contained in this Modification and acknowledge receipt of a copy of this Modification.

_____
Madhukar Sharma
6/22/2023
Date _____

_____
Giancarlo Gasparini
6/22/2023
Date _____



**THIS NOTE REPRESENTS A MODIFICATION OF THAT CERTAIN REVOLVING PROMISSORY NOTE DATED MARCH 10, 2022, AS MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL – REVOLVING DRAW) DATED MARCH 10, 2023, AS MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL - REVOLVING DRAW) DATED AUGUST 10, 2023, AS FURTHER MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL - REVOLVING DRAW) DATED NOVEMBER 10, 2023, EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL SUM OF $2,000,000.00 (COLLECTIVELY, THE "ORIGINAL NOTE"). THE ORIGINAL NOTE IS CONFIRMED TO HAVE A BALANCE AS OF THE DATE HEREOF OF $2,000,000.00. THIS NOTE EVIDENCES THE MODIFICATION OF THE ORIGINAL NOTE TO (A) REMOVE THE REVOLVING FEATURE OF THE LOAN, (B) CONVERT THE PAYMENTS TO PRINCIPAL AND INTEREST, AMORTIZED OVER THE REMAINING TERM OF THE LOAN, AND (C) EXTEND THE MATURITY DATE HEREUNDER TO JANUARY 10, 2028. DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,450.00 WERE PREVIOUSLY PAID IN CONNECTION WITH THE ORIGINAL NOTE. NO ADDITIONAL DOCUMENTARY STAMP TAXES OR INTANGIBLE TAXES ARE DUE IN CONNECTION WITH THE EXECUTION OF THIS NOTE. THIS NOTE ALSO AMENDS, SUPERSEDES AND REPLACES IN ITS ENTIRETY THE TERMS OF THE ORIGINAL NOTE. THIS IS A BALLOON NOTE, WITH ALL PRINCIPAL AND ACCRUED INTEREST THEREON DUE IN FULL JANUARY 10, 2028.**

**COMMERCIAL LOAN NOTE**
**(Amended and Restated)**

$2,000,000.00                                                                                                                            January 10, 2024 (Effective Date)

1. **PROMISE TO PAY**. On or before January 10, 2028 (the "Maturity Date"), the undersigned, **Forensic Stat Laboratory, Inc., a Florida corporation**, located at 8849 Canterbury Cove Court, Jacksonville, Florida 32256, County of Duval, State of Florida ("Borrower") for value received, hereby promises to pay to the order of **UBank**, located at 6120 S. Broadway Avenue, Tyler, Texas 75703, (together with its successors and assigns, the "Lender") the sum of **TWO MILLION AND NO/100 DOLLARS ($2,000,000.00)** (collectively, the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time. Principal and interest payments shall be made at Lender's address above unless otherwise designated by Lender in writing. Each payment hereunder shall be applied first to advanced costs, charges and fees, then to accrued interest, and then to principal.

   Prior to the Maturity Date, Borrower will pay this Note in accordance with the following payment schedule:

   FORTY-EIGHT (48) consecutive monthly payments of principal and interest each in the amount of **$50,725.17**, commencing **February 10, 2024**, and continuing on the same day each month thereafter (in accordance with a forty-eight (48) month amortization schedule). A final payment of all remaining principal and accrued interest thereon will be due on the Maturity Date.

   Interest will accrue at a fixed rate of **10.00% per annum**. Interest shall be calculated on the basis of a 360 day calendar year.

   Borrower's final payment will be due on the Maturity Date in the estimated amount of $50,725.17 and will be for all remaining principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

This Note represents a modification of that certain Revolving Promissory Note dated March 10, 2022, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated March 10, 2023, as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, and as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, in the original principal sum of $2,000,000.00 (the "Original Note"). This Note amends, supersedes, and replaces in their entirety the terms of the Original Note. The commercial loan (the "Loan"), as evidenced by this Note, shall continue to be governed by the terms and conditions of the Loan Documents previously executed by and among Borrower and Lender in connection with the Original Note, as modified from time to time, and as amended and restated on even date.

Notwithstanding anything contained to the contrary in the Original Note, each of the previous Promissory Notes was intended to modify the preceding Promissory Note and was not intended to pay off the preceding Promissory Note.

2. USE OF PROCEEDS. Borrower certifies that the proceeds of this loan are to be used for business purposes.

3. EVENTS OF DEFAULT. Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, declare this Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

   (a) Any failure to make any payment within 10 days of its due date, of principal or accrued interest on this Note or any other Obligation.

   (b) Any representation or warranty of Borrower or any Guarantor set forth in this Note or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Note or any other Obligation shall be materially inaccurate or misleading.

   (c) Borrower or Guarantor shall fail to observe or perform any other term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to this Note any other Obligation, or Borrower and/or Guarantor shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for thirty (30) days after written notice from Lender of such default.

   (d) The dissolution of Borrower or of any endorser or Guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

   (e) If any individual Guarantor shall die or be adjudged incompetent, provided, however, if within sixty (60) days thereof, a new guarantor acceptable to Lender in its sole and absolute discretion is provided (considering the obligations still outstanding under the Guaranty) or additional collateral in an amount acceptable to Lender exercising its reasonable discretion is provided, then this shall not be an event of default.

   (f) The creation of any lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or Guarantor hereof including, without limitation, any property deposited with Lender.

(g) In the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower or Guarantor that will affect their ability to repay the Obligations.

(h) A commencement by the Borrower or Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower, or for any substantial part of the property of Borrower, or ordering the wind-up or liquidation of the affairs of Borrower; or the filing and pendency for thirty (30) days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or Guarantor of any general assignment for the benefit of creditors, or the failure of the Borrower or Guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or Guarantor in furtherance of any of the foregoing.

(i) The breach by Borrower or Guarantor of any term, provision or condition contained in any Lease (as that term is defined in the Loan Agreement).

4. REMEDIES. After the occurrence of an Event of Default, in addition to any other remedy permitted by law, Lender may at any time, without notice, apply the Collateral to this Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that this Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence In the future.

5. LATE PAYMENTS: DEFAULT RATE: FEES. If any payment is not paid within 10 days of it due date, (whether by acceleration or otherwise) the Borrower agrees to pay to Lender a late payment fee equal to five percent (5%) of the payment amount. After an Event of Default, Borrower agrees that Lender may, without notice, increase the Interest Rate to the maximum rate allowed by law (the "Default Rate"). Lender may impose a $10.00 fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

In the event of default for which the Lender does not accelerate the loan, including the failure of Borrower and Guarantor to provide financial statements or tax returns as required hereunder or under any separate loan agreement, the applicable loan interest rate, for a period beginning ten days after written notice of such default and ending upon the curing of said default, shall increase to the maximum interest rate permitted by applicable law. Such default interest rates shall apply to the outstanding principal balance of the loan. Upon the curing of the default, the interest rate on the loan shall revert to the initially agreed upon interest rate effective on the date on which the default is cured.

Notwithstanding any provision of this Note or any Loan Document executed in connection with this Note to the contrary, the Borrower and Lender intend that no provision of this Note or any Loan Document executed in connection with this Note be interpreted, construed, applied, or enforced in a way that will permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected by the

laws of the jurisdiction indicated below, or federal law if federal law preempts the law of such jurisdiction with respect to this transaction (the "Maximum Permitted Rate"), if, however, any such provision is so interpreted, construed, applied, or enforced, Borrower and Lender intend (a) that such provision automatically shall be deemed revised so as to require payment only of interest at the Maximum Permitted Rate; and (b) if interest payments in excess of the Maximum Permitted Rate have been received, that the amount of such excess shall he deemed credited retroactively in reduction of the then-outstanding principal amount of this obligation, together with interest at the Maximum Permitted Rate, in connection with all calculations to determine the Maximum Permitted Rate, the Borrower and Lender intend (a) that all charges be excluded to the extent they are properly excludable under the usury laws of such jurisdiction or the United States, as they from time to time are determined to apply to this obligation; and (b) that all charges that may be spread in the manner provided by statute of the jurisdiction indicated or any similar law, be so spread.

6. **PREPAYMENT. The Borrower may prepay all or part of the principal sum of the indebtedness evidence by this Note at any time without penalty, which prepaid amounts shall be applied to the amounts due in reverse order of their due dates.**

7. ENTIRE AGREEMENT. Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

8. SEVERABILITY. The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

9. ASSIGNMENT. Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

10. MODIFICATION: WAIVER OF LENDER. The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co-borrower, endorser or guarantor or (ii) any of its rights against any co-borrower, guarantor or endorser.

11. WAIVER OF BORROWER. Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof. Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of Collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC"). Such waiver is entered to the full extent permitted by Section 3-605 (1) of the UCC.

12. GOVERNING LAW: CONSENT TO JURISDICTION. This Note is delivered in, is intended to be performed in, will be construed and enforceable in accordance with and governed by the internal laws of, the State of Florida, without regard to principles of conflicts of law. Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

13. WAIVER OF JURY TRIAL. BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT THEY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION

WITH THIS NOT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER'S ACCEPTING THIS NOTE FROM BORROWER.

14. MODIFICATION OF NOTE. If Borrower requests a modification of this Note prior to maturity, and in the event Lender agrees to the modification request, Lender shall be entitled to assess a modification fee equal to one percent (1.00%) of the outstanding balance of the Note. If the requested modification does not occur because of Borrower's failure to comply with the terms and conditions of the proposed modification, Borrower shall nonetheless owe the modification fee and reimbursement of all of Lender's third-party costs.

**BORROWER:**

FORENSIC STAT LABORATORY, INC.,
A FLORIDA CORPORATION

By: _____
       Giancarlo Gasparini
Its:   President

**THIS NOTE REPRESENTS A MODIFICATION OF THAT CERTAIN REVOLVING PROMISSORY NOTE DATED MARCH 10, 2022, AS MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL – REVOLVING DRAW) DATED MARCH 10, 2023, AS MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL - REVOLVING DRAW) DATED AUGUST 10, 2023, AS FURTHER MODIFIED BY THAT CERTAIN PROMISSORY NOTE (COMMERCIAL - REVOLVING DRAW) DATED NOVEMBER 10, 2023 EXECUTED BY BORROWER TO LENDER, IN THE ORIGINAL PRINCIPAL SUM OF $2,000,000.00 (COLLECTIVELY, THE "ORIGINAL NOTE"). THE ORIGINAL NOTE IS CONFIRMED TO HAVE A BALANCE AS OF THE DATE HEREOF OF $2,000,000.00. THIS NOTE EVIDENCES THE MODIFICATION OF THE ORIGINAL NOTE TO (A) REMOVE THE REVOLVING FEATURE OF THE LOAN, (B) CONVERT THE PAYMENTS TO PRINCIPAL AND INTEREST, AMORTIZED OVER THE REMAINING TERM OF THE LOAN, AND (C) EXTEND THE MATURITY DATE HEREUNDER TO JANUARY 10, 2028. DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $2,450.00 WERE PREVIOUSLY PAID IN CONNECTION WITH THE ORIGINAL NOTE. NO ADDITIONAL DOCUMENTARY STAMP TAXES OR INTANGIBLE TAXES ARE DUE IN CONNECTION WITH THE EXECUTION OF THIS NOTE. THIS NOTE ALSO AMENDS, SUPERSEDES AND REPLACES IN ITS ENTIRETY THE TERMS OF THE ORIGINAL NOTE. THIS IS A BALLOON NOTE, WITH ALL PRINCIPAL AND ACCRUED INTEREST THEREON DUE IN FULL JANUARY 10, 2028.**