# Composite Exhibit "D"

**LOAN AGREEMENT**
**(Amended and Restated)**

**UBank**
**6120 S. Broadway Avenue**
**Tyler, Texas 75703**

(Hereinafter referred to as the "Lender")

**Forensic Stat Laboratory, Inc., a Florida corporation**
**8849 Canterbury Cove Court**
**Jacksonville, Florida 32256**

(Hereinafter referred to as the "Borrower")

**Giancarlo Gasparini**
**550 Melaleuca Lane**
**Miami, Florida 33137**

**Madhukar Sharma**
**6428 Beach Boulevard**
**Jacksonville, Florida 32216**

(Hereinafter collectively referred to as the "Guarantor")

This Loan Agreement (Amended and Restated) ("Agreement") is effective as of the 10th day of January, 2024, by and between Lender, Borrower and Guarantor. This Agreement amends and restates, in full, any prior Loan Agreement executed by and among Lender, Borrower and Guarantor with regard to the Loan (as hereafter defined).

This Agreement applies to the commercial loan (the "Loan") originally evidenced by that certain Revolving Promissory Note dated March 10, 2022 in the original principal sum of $2,000,000.00, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated March 10, 2023, as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated November 10, 2023 (hereinafter collectively, the "Note"), and all Loan Documents executed in connection therewith or herewith, as applicable. The Note is being modified on even date to (a) remove the revolving feature of the loan, (b) convert the payments to principal and interest, amortized over the remaining term of the Loan, and (c) extend the maturity date thereunder to January 10, 2028. The Note, as amended by virtue of that certain Commercial Loan Note (Amended and Restated) in the principal amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) of even date is also referred to herein as the "Note". The terms "Loan Documents" and "Obligations," as used in this Agreement, are as defined herein. The term "Property," as used in this Agreement, is defined as any real or personal property described in any mortgage or security instrument securing repayment of the Note.

Relying upon the covenants, agreements, representations and warranties contained in this Agreement and in the Loan Documents, Lender is willing to extend credit to Borrower upon the terms and subject to the conditions set forth herein, and Lender, and Borrower and Guarantor agree as follows:

**REPRESENTATIONS.** Borrower and/or Guarantor, as applicable, represent(s) that from the date of this Agreement and until final payment in full of the Obligations: **Accurate Information.** All information now and hereafter furnished to Lender is and will be true, correct and complete. Any such information relating to Borrower's or Guarantor's financial condition will accurately reflect their financial condition as of the date(s) thereof, (including all contingent liabilities of every type), and each further represent that its financial condition has not changed

with Borrower's request for the Loan or shown on the financial statements submitted to Lender. **Bankruptcy.** Borrower and Guarantor have not made any assignment for the benefit of its creditors, admitted in writing its inability to pay its debts as they become due, filed a petition of bankruptcy or been adjudicated bankrupt or insolvent, or filed a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, receivership, or similar relief under any statute, law or regulation. **Loan Purpose.** The proceeds of the Loan will be used for business purposes and that Borrower and Guarantor understand(s) that no Disclosure Statement is required under the Federal Truth-in-Lending Act.

This Agreement applies to the loan or loans (individually and collectively, the "Loan") evidenced by the Note, as modified from time to time (whether one or more, the "Note") and all Loan Documents. The terms "Loan Documents" and "Obligations," as used in this Agreement, are hereinafter defined.

**AFFIRMATIVE COVENANTS.** Borrower and Guarantor, as applicable, agree(s) that from the date of this Agreement and until final payment in full of the Obligations, unless Lender shall otherwise consent in writing, Borrower and Guarantor, as applicable, will: **Access to Business Information.** Borrower shall maintain proper books of accounts and records and enter therein complete and accurate entries and records of all of its transactions in accordance with reasonable cash accounting methods consistently applied in accordance with past practices and give representatives of Lender access thereto at all reasonable times, including permission to: (a) examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the Obligations as it may reasonably request from time to time, and (b) communicate directly with any of Borrower's officers, employees, agents, accountants or other financial advisors with respect to the business, financial conditions and other affairs of the Borrower. **Business Continuity.** Conduct its business in substantially the same manner and locations as such business is now and has previously been conducted. **Compliance with Laws.** Borrower and Guarantor shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or Guarantor or their assets including but not limited to all Environmental Laws, in all respects material to Borrower's or Guarantor's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower or Guarantor regarding to any environmental or safety and health rule, regulation, statute, ordinance or law. Borrower and Guarantor shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of their properties and the advantageous conduct of their businesses and as may be required from time to time by applicable law. **Compliance with Other Agreements.** Comply with all terms and conditions contained in this Agreement, and any other Loan Documents. **Inspection of Collateral.** Borrower shall give Lender reasonable access to the Collateral and the other property securing the Obligations for the purpose of performing examinations thereof and to verify its condition or existence. **Insurance.** At its own cost, as required by Lender from time to time, Borrower shall obtain and maintain insurance against (a) loss, destruction or damage to its properties and business of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower and, in any event, sufficient to fully protect Lender's interest in the Property, including but not limited to hazard insurance, liability insurance and wind insurance, (b) workmen's compensation insurance as required by law, and (c) insurance against public liability and third party property damage of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower. All such policies shall (i) be issued by financially sound and reputable insurers, (ii) name Lender as an additional insured and, where applicable, as loss payee under a Lender loss payable endorsement satisfactory to Lender, and (iii) shall provide for thirty (30) days written notice to Lender before such policy is altered or canceled. All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower on the date hereof and at such other times as Lender may request from time to time. During the construction of any improvements on the Property, Borrower shall maintain with respect to the Property "all-risk" builders risk insurance (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the total value of the improvements under construction, naming Lender as mortgagee and loss payee. All casualty insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Lender that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Borrower and the

organization and/or operating agreement, as applicable. **Additional Indebtedness.** Create or incur any additional debts. **Additional Encumbrances.** Create, assume, or permit to exist any mortgage, security deed, deed of trust, pledge, lien, charge or other encumbrance on the Property, whether now owned or hereafter acquired, other than: (i) security interests required by the Loan Documents; (ii) liens for taxes contested in good faith; (iii) liens accruing by law for employee benefits; or (iv) Permitted Liens. **Merger: Disposition of Assets.** Borrower and any corporate Guarantor shall not (a) change its capital structure, (b) merge or consolidate with any entity, (c) amend or change its articles of organization and operating agreement, or (d) sell, lease, transfer or otherwise dispose of, or grant any person an option to acquire, or sell and leaseback, all or any substantial portion of the assets securing this Loan, whether now owned or hereafter acquired, except for (i) bona fide leases, upon commercially reasonable terms, in the ordinary course of business, and (ii) bona fide sales of inventory in the ordinary course of business and dispositions of property which is obsolete and not used or useful in its business. **Guarantees.** Borrower shall not guarantee or otherwise become responsible for the obligations of any other person or entity. **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to Lender and/or any third party or default in the performance of any obligation to Lender and/or any third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any government by which the management of Borrower or any Guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of or debts due Borrower which is not otherwise released, resolved, satisfied or transferred to bond or other collateral within forty-five (45) days.

**COSTS AND EXPENSES.** Borrower shall pay all costs and expenses incurred in connection with preparation for, closing, and servicing the Loan including, without limitation, any appraisal fees, inspection fees, surveys, legal fees, including the fees of Lender's counsel, intangible taxes, documentary taxes, recording costs, license and permit fees, title insurance, tax service fee, casualty, flood and other insurance premiums that may be required or incurred. Any such fees which arise after closing of the Loan or which are recurring shall be paid upon demand by Lender, any such expenses may be deducted from the amount to be advanced from the Loan, and interest on such advances shall accrue thereon from the date of the Lender's payment of such expense item.

**TAXES.** Borrower and/or Guarantor (if applicable) shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

**FINANCIAL STATEMENTS.** Guarantor shall deliver to Lender, within 90 days after the close of each fiscal year, unaudited financial statements, certified to be true, correct, and accurate in all respects, reflecting Borrower's and Guarantor's operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement, and statement of cash flow, with supporting schedules; all on a consolidating basis in reasonable detail, prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year. Unaudited financial statements may be accepted by Lender if they bear an original signature or include a transmittal letter with an original signature of Borrower or Guarantor, as appropriate, or by the independent accountant who prepared the statement.

**TAX RETURNS.** Within 30 days of the due date for filing, Borrower and each Guarantor shall deliver to Lender a complete copy of their federal tax returns, including all statements and schedules attached thereto. Each return shall be signed and certified to be a true, correct, and is a complete copy of such tax return as filed. If an extension is filed, Lender shall be provided with a copy of the extension within 30 days of filing.

**EVENTS OF DEFAULT.** Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, declare the Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto: (a) any failure to make any payment within 10 days of its due date, of principal or accrued interest on the Note or any other Obligation; (b) any representation or warranty of Borrower set forth in this Loan Agreement or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, the Note or any other Obligation shall be materially inaccurate or misleading; (c) Borrower or Guarantor shall fail to observe or perform any other term or condition of this Loan Agreement or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to the Note or any other Obligation, or Borrower and/or Guarantor shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for thirty (30) days after written notice from Lender of such default; (d) the dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; (e) if any individual Guarantor shall die or be adjudged incompetent, provided, however, if within sixty (60) days thereof, a new guarantor acceptable to Lender in its sole and absolute discretion is provided (considering the obligations still outstanding under the Guaranty) or additional collateral in an amount acceptable to Lender exercising its reasonable discretion is provided, then this shall not be an event of default; (f) the creation of any lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or Guarantor hereof including, without limitation, any property deposited with Lender.; (g) in the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower or Guarantor that will affect their ability to repay the Obligations; (h) a commencement by the Borrower or Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower, or for any substantial part of the property of Borrower, or ordering the wind-up or liquidation of the affairs of Borrower; or the filing and pendency for thirty (30) days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or Guarantor of any general assignment for the benefit of creditors, or the failure of the Borrower or Guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or Guarantor in furtherance of any of the foregoing; (i) The breach by Borrower or Guarantor of any term, provision or condition contained in any lease.

**REMEDIES.** After the occurrence of an Event of Default, in addition to any other remedy permitted by law, Lender may at any time, without notice, apply the Collateral to the Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that the Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence In the future.

**DEFAULT WITHOUT ACCELERATION.** In the event of default for which the Lender does not accelerate the loan, including the failure of Borrower and Guarantor to provide financial statements or tax returns as required hereunder or under any separate loan agreement, the applicable loan interest rate, for a period beginning ten days after written notice of such default and ending upon the curing of said default, shall increase to the maximum interest

**IN WITNESS WHEREOF**, Borrower, Guarantor and Lender on the day and year first written above, have caused this Agreement to be executed under seal.

**BORROWER:**

FORENSIC STAT LABORATORY, INC.,
A FLORIDA CORPORATION

By:____________________________
Giancarlo Gasparini
Its: President

**GUARANTOR:**

GIANCARLO GASPARINI

By:____________________________
Giancarlo Gasparini

MADHUKAR SHARMA

By:____________________________
Madhukar Sharma

**LENDER:**

UBANK

By:____________________________
Print Name: Kristi Johnston
Its: Market president

# AGREEMENT WAIVING RIGHT TO JURY TRIAL

This Agreement Waiving Right to Jury Trial (this "Agreement") is made as of the ___ day of ______________, 2024, by and among **UBank** ("Lender"), **Forensic Stat Laboratory, Inc., a Florida corporation** ("Borrower"), and **Giancarlo Gasparini, and Madhukar Sharma** (collectively, the "Guarantor").

RECITALS:

A. Pursuant to that certain Revolving Credit Agreement dated March 10, 2022, as modified by that certain Commercial Loan Agreement dated March 10, 2023, as modified by that certain Commercial Loan Agreement dated August 10, 2023, as modified by that certain Commercial Loan Agreement dated November 10, 2023, and as further modified by that certain Loan Agreement (Amended and Restated) of even date herewith, Lender has agreed to modify an existing loan to Borrower in the amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) ("Loan"), subject to the terms and conditions set forth in the Loan Agreement.

B. In connection with the Loan, Borrower has executed and delivered to Lender that certain Revolving Promissory Note dated March 10, 2022, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated March 10, 2023, as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, as modified by that certain Promissory Note (Commercial – Revolving Draw) and as further modified by that certain Commercial Loan Note (Amended and Restated) of even date herewith in the principal sum described above (the "Note"), which Note is secured by the Property (as that term is defined in the Loan Agreement), and either Borrower or Guarantor, as applicable, have executed and delivered or accepted certain other Loan Documents including, without limitation, written agreements of guaranty executed by each Guarantor of Borrower's loan obligations to Lender under the Loan (the "Guarantees"), as well as a Loan Agreement and other related documents evidencing and/or securing payment of the Loan (hereinafter, the Note, the Guarantees, the Loan Agreement and any and all related agreements, documents, certificates, affidavits and the like evidencing or securing payment or performance of the Loan are collectively referred to as the "Loan Documents" and separately as a "Loan Document").

C. Lender, Borrower and Guarantor recognize that the Loan constitutes a relatively complex business transaction, that the Loan Documents are relatively lengthy and technical in nature and may be susceptible to misinterpretation if isolated provisions are the subject of review, and that in the event of any dispute as to the rights and obligations of the parties under the Loan Documents and otherwise with respect to the Loan, a judge, rather than a jury, would be the most efficient and best qualified trier of fact. Accordingly, Lender, Borrower and Guarantor desire to waive their respective rights to jury trial with respect to any litigation or other legal proceeding based on any Loan Document, or arising out of, under or in connection with any Loan Document or the Loan.

AGREEMENTS:

NOW, THEREFORE, for and in consideration of the mutual covenants and promises of the parties hereto, and in further consideration of the sum of Ten and No/100 ($10.00) Dollars and other good and valuable consideration in hand paid by each party hereto to the other, the receipt and sufficiency of such consideration being hereby mutually acknowledged, Lender, Borrower and Guarantor hereby agree as follows:

1. The foregoing recitals are true and correct and are hereby incorporated into this Agreement.

2. **LENDER, BORROWER AND GUARANTOR EACH KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY, WITH RESPECT TO ANY LITIGATION OR LEGAL PROCEEDINGS BASED ON, OR ARISING OUT OF THE NOTE, OR OTHER LOAN DOCUMENT, INCLUDING ANY COURSE OF CONDUCT, COURSE OF DEALINGS, VERBAL OR WRITTEN STATEMENTS, OR ACTIONS OR OMISSIONS OF ANY PARTY WHICH IN ANY WAY RELATES TO THE LOAN. THE PARTIES HERETO HAVE SPECIFICALLY DISCUSSED AND NEGOTIATED THIS WAIVER AND UNDERSTAND THE LEGAL CONSEQUENCES OF SIGNING THIS AGREEMENT.**

3. This waiver by Borrower and Guarantor is a material inducement for Lender's making of the Loan, and Lender's waiver is a material inducement for Borrower's acceptance of the Loan and for Borrower's and Guarantor's giving the Note.

4. At a party's request, the other parties will join in asking the court in which suit is pending to try the case and decide all issues, including issues of fact, without a jury.

5. Notwithstanding the narrower definition ascribed to the term "Loan" above, the term "Loan" as used in this Agreement will include, without limitation, any future advances, modifications, renewals, extensions, and refinancings of the Loan described in the recitals.

6. If for any reason the waivers set forth in Paragraph 2 are declared or found by a court of competent jurisdiction to be invalid, illegal or unenforceable, and any litigation or other legal proceeding relating to or arising in connection with the Loan is in fact conducted before an impaneled jury, each party hereto agrees that it will not seek to have this Agreement or the existence thereof admitted into evidence with respect to such litigation or other legal proceeding. The parties hereto acknowledge that damages are an inadequate remedy for any breach of the covenant set forth in the preceding sentence and, therefore, such covenant shall be subject to enforcement by injunctive relief without the need to demonstrate the inadequacy of monetary damages.

7. If any one or more of the provisions contained in this Agreement is declared or found by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provision or portion thereof shall be deemed stricken and severed and the remaining provisions thereof shall continue in full force and effect.

8. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective agents, officers, directors, heirs, legal and personal representatives, successors and assigns.

9. The validity, meaning and effect of this Agreement shall be determined as provided by the law of the State of Florida applicable to agreements made and to be performed in the State of Florida.

10. This document may be executed in several counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one document.

The parties hereto have executed this Agreement on or as of the date first above written.

**LENDER:**

UBANK

By: [signature]
Print Name: Kristi Johnston
Its: Market President

**BORROWER:**

FORENSIC STAT LABORATORY, INC.,
A FLORIDA CORPORATION

By:________________________________
Giancarlo Gasparini
Its: President

**GUARANTOR:**

GIANCARLO GASPARINI

By:________________________________
Giancarlo Gasparini

MADHUKAR SHARMA

By:________________________________
Madhukar Sharma

# LOAN AGREEMENT
## (Amended and Restated)

**UBank**
**6120 S. Broadway Avenue**
**Tyler, Texas 75703**

(Hereinafter referred to as the "Lender")

**Forensic Stat Laboratory, Inc., a Florida corporation**
**8849 Canterbury Cove Court**
**Jacksonville, Florida 32256**

(Hereinafter referred to as the "Borrower")

**Giancarlo Gasparini**
**550 Melaleuca Lane**
**Miami, Florida 33137**

**Madhukar Sharma**
**6428 Beach Boulevard**
**Jacksonville, Florida 32216**

(Hereinafter collectively referred to as the "Guarantor")

This Loan Agreement (Amended and Restated) ("Agreement") is effective as of the 10th day of January, 2024, by and between Lender, Borrower and Guarantor. This Agreement amends and restates, in full, any prior Loan Agreement executed by and among Lender, Borrower and Guarantor with regard to the Loan (as hereafter defined).

This Agreement applies to the commercial loan (the "Loan") originally evidenced by that certain Revolving Promissory Note dated March 10, 2022 in the original principal sum of $2,000,000.00, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated March 10, 2023, as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated November 10, 2023 (hereinafter collectively, the "Note"), and all Loan Documents executed in connection therewith or herewith, as applicable. The Note is being modified on even date to (a) remove the revolving feature of the loan, (b) convert the payments to principal and interest, amortized over the remaining term of the Loan, and (c) extend the maturity date thereunder to January 10, 2028. The Note, as amended by virtue of that certain Commercial Loan Note (Amended and Restated) in the principal amount of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) of even date is also referred to herein as the "Note". The terms "Loan Documents" and "Obligations," as used in this Agreement, are as defined herein. The term "Property," as used in this Agreement, is defined as any real or personal property described in any mortgage or security instrument securing repayment of the Note.

Relying upon the covenants, agreements, representations and warranties contained in this Agreement and in the Loan Documents, Lender is willing to extend credit to Borrower upon the terms and subject to the conditions set forth herein, and Lender, and Borrower and Guarantor agree as follows:

**REPRESENTATIONS.** Borrower and/or Guarantor, as applicable, represent(s) that from the date of this Agreement and until final payment in full of the Obligations: **Accurate Information**. All information now and hereafter furnished to Lender is and will be true, correct and complete. Any such information relating to Borrower's or Guarantor's financial condition will accurately reflect their financial condition as of the date(s) thereof, (including all contingent liabilities of every type), and each further represent that its financial condition has not changed

materially or adversely since the date(s) of such documents. **Authorization; Non-Contravention**. The execution, delivery and performance by Borrower and Guarantor of this Agreement and other Loan Documents to which they are a party are within their power, have been duly authorized as may be required and, if necessary, by making appropriate filings with any governmental agency or unit and are the legal, binding, valid and enforceable obligations of Borrower and Guarantor, and do not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law, a violation of the organization documents of Borrower, or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting Borrower, (ii) result in the creation or imposition of any lien (other than the lien(s) created by the Loan Documents) on any of Borrower's assets, or (iii) give cause for the acceleration of any obligations of Borrower to any other creditor. Borrower is duly organized and in good standing under the laws of the state in which it was formed, has the power to carry on the business in which it is engaged, and the Loan has been duly authorized by all necessary actions of Borrower under applicable law, and the Loan will not violate any provisions of law or any of its organizational documents or agreements to which it is a party. **Title**. Borrower has good and marketable title to the assets reflected on the most recent balance sheet submitted to Lender, free and clear from all liens and encumbrances of any kind, except for (collectively, the "Permitted Liens"): (a) current taxes and assessments not yet due and payable, (b) liens and encumbrances, if any, reflected or noted on such balance sheet or notes thereto, (c) assets disposed of in the ordinary course of business, and (d) any security interests, pledges, assignments or mortgages granted to Lender to secure the repayment or performance of the Obligations. To Borrower's knowledge, no default has occurred under any Permitted Liens and no claims or interests adverse to Borrower's present rights in the Property or other assets have arisen. **Business**. Borrower is not a party to or subject to any agreement or restriction that may have a material adverse effect on Borrower's business, properties or prospects. Borrower has all franchises, authorizations, patents, trademarks, copyrights and other rights necessary to advantageously conduct its business. They are all in full force and effect and are not in known conflict with the rights of others. **Licenses, etc**. Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business. Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without any conflict with the rights of any other person or entity. All of the foregoing are in full force and effect and none of the foregoing are in known conflict with the rights of others. **Laws and Taxes**. Borrower is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency. Borrower has filed all required tax returns and reports that are now required to be filed by it in connection with any federal, state and local tax, duty or charge levied, assessed or imposed upon Borrower or its assets, including unemployment, social security, and real estate taxes. Borrower has paid all taxes which are now due and payable. No taxing authority has asserted or assessed any additional tax liabilities against Borrower which are outstanding on this date, and Borrower has not filed for any extension of time for the payment of any tax or the filing of any tax return or report. **Subsidiaries and Partnerships**. Borrower has no subsidiaries and is not a party to any partnership agreement or joint venture agreement except as Lender has been previously advised in writing. **Discharge of Liens and Taxes**. Borrower has duly filed, paid and/or discharged all taxes or other claims which may become a lien on the Property or other assets, except to the extent that such items are being appropriately contested in good faith and an adequate reserve for the payment thereof is being maintained. The obtaining and performing of the Loan does not and will not result in a breach of, constitute a default under, require any consent under, or result in the creation of any lien, charge, or encumbrance upon any property of Borrower pursuant to any instrument, order, or other agreement to which Borrower is a party or by which Borrower, any of its officers as such, or any of its property is bound. **Sufficiency of Capital**. Borrower is not, and after consummation of this Agreement and after giving effect to all indebtedness incurred and liens created by Borrower in connection with the Note, will not be, insolvent within the meaning of 11 U.S.C. § 101(32). **No Litigation**. Except as previously disclosed to Lender by Borrower in writing, there are no suits or proceedings pending or threatened against or affecting Borrower, and no proceedings before any governmental body are pending or threatened against Borrower. Borrower shall promptly notify Lender in writing of any litigation, disputes or other proceedings during the term of the Loan. **Additional Debt**. Borrower and Guarantor have has not incurred any debts, liabilities, or obligations (whether direct or contingent) and has not committed itself to incur any debts, liabilities, or obligations other than those disclosed to Lender in connection

with Borrower's request for the Loan or shown on the financial statements submitted to Lender. **Bankruptcy.** Borrower and Guarantor have not made any assignment for the benefit of its creditors, admitted in writing its inability to pay its debts as they become due, filed a petition of bankruptcy or been adjudicated bankrupt or insolvent, or filed a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, receivership, or similar relief under any statute, law or regulation. **Loan Purpose.** The proceeds of the Loan will be used for business purposes and that Borrower and Guarantor understand(s) that no Disclosure Statement is required under the Federal Truth-in-Lending Act.

This Agreement applies to the loan or loans (individually and collectively, the "Loan") evidenced by the Note, as modified from time to time (whether one or more, the "Note") and all Loan Documents. The terms "Loan Documents" and "Obligations," as used in this Agreement, are hereinafter defined.

**AFFIRMATIVE COVENANTS**. Borrower and Guarantor, as applicable, agree(s) that from the date of this Agreement and until final payment in full of the Obligations, unless Lender shall otherwise consent in writing, Borrower and Guarantor, as applicable, will: **Access to Business Information**. Borrower shall maintain proper books of accounts and records and enter therein complete and accurate entries and records of all of its transactions in accordance with reasonable cash accounting methods consistently applied in accordance with past practices and give representatives of Lender access thereto at all reasonable times, including permission to: (a) examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the Obligations as it may reasonably request from time to time, and (b) communicate directly with any of Borrower's officers, employees, agents, accountants or other financial advisors with respect to the business, financial conditions and other affairs of the Borrower. **Business Continuity**. Conduct its business in substantially the same manner and locations as such business is now and has previously been conducted. **Compliance with Laws**. Borrower and Guarantor shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or Guarantor or their assets including but not limited to all Environmental Laws, in all respects material to Borrower's or Guarantor's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower or Guarantor regarding to any environmental or safety and health rule, regulation, statute, ordinance or law. Borrower and Guarantor shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of their properties and the advantageous conduct of their businesses and as may be required from time to time by applicable law. **Compliance with Other Agreements**. Comply with all terms and conditions contained in this Agreement, and any other Loan Documents. **Inspection of Collateral.** Borrower shall give Lender reasonable access to the Collateral and the other property securing the Obligations for the purpose of performing examinations thereof and to verify its condition or existence. **Insurance**. At its own cost, as required by Lender from time to time, Borrower shall obtain and maintain insurance against (a) loss, destruction or damage to its properties and business of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower and, in any event, sufficient to fully protect Lender's interest in the Property, including but not limited to hazard insurance, liability insurance and wind insurance, (b) workmen's compensation insurance as required by law, and (c) insurance against public liability and third party property damage of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower. All such policies shall (i) be issued by financially sound and reputable insurers, (ii) name Lender as an additional insured and, where applicable, as loss payee under a Lender loss payable endorsement satisfactory to Lender, and (iii) shall provide for thirty (30) days written notice to Lender before such policy is altered or canceled. All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower on the date hereof and at such other times as Lender may request from time to time. During the construction of any improvements on the Property, Borrower shall maintain with respect to the Property "all-risk" builders risk insurance (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the total value of the improvements under construction, naming Lender as mortgagee and loss payee. All casualty insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Lender that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Borrower and the

further agreement of the insurer waiving rights of subrogation against Lender, and rights of set-off, counterclaim or deductions against Borrower. Borrower shall provide Lender with copies of all insurance policies maintained by Borrower as required hereunder on an annual basis in at least summary form. In the event Borrower fails to provide, maintain, keep in force, and furnish to Lender the policies of insurance required by this section, Lender may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Lender chooses, at Borrower's expense; provided however, Lender shall have no responsibility to obtain any insurance, but if Lender does obtain insurance, Lender shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Borrower. **Maintain Properties**. Maintain, preserve and keep its property (and without limitation the Property) in good repair, working order and condition, making all needed replacements, additions and improvements thereto, to the extent allowed by this Agreement. Borrower shall not commence construction, demolition or further improvements to the Property without the prior written consent of Lender which consent shall not be unreasonably withheld, or delayed. **Escrows**. Escrows with regard to real estate taxes and insurance, as required by the terms of the Loan Documents shall be waived with the right of Lender to require Borrower to comply with such escrow provisions, at the election of the Lender during the term of the Loan. **Non-Default Certificate from Borrower**. Deliver to Lender, with the Financial Statements required below, a certificate signed by Borrower, if Borrower is an individual, or by a principal financial officer of Borrower certifying and warranting that no "Default" currently exists as certified in the Loan Documents nor any event which, upon the giving of notice of lapse of time or both, would constitute such a Default, has occurred. **Notice of Default and Other Notices**. (a) **Notice of Default**. Furnish to Lender immediately upon becoming aware of the existence of any condition or event which constitutes a Default (as defined in the Loan Documents) or any event which, upon the giving of notice or lapse of time or both, may become a Default (either with Lender or under any other contract to which Borrower is a party and an acceleration of indebtedness is caused thereby), written notice specifying the nature and period of existence thereof and the action which Borrower is taking or proposes to take with respect thereto. (b) **Other Notices**. Promptly notify Lender in writing of (i) any material adverse change in its financial condition or its business; (ii) any default under any material agreement, contract or other instrument to which it is a party or by which any of its properties are bound, or any acceleration of the maturity of any indebtedness owing by Borrower; (iii) any material adverse claim against or affecting Borrower or any part of its properties; (iv) the commencement of, and any material determination in, any litigation with any third party or any proceeding before any governmental agency or unit affecting Borrower; and (v) at least 30 days prior thereto, any change in Borrower's name or address as shown above, and/or any change in Borrower's structure. **Other Financial Information**. Deliver promptly such other information regarding the operation, business affairs, and financial condition of Borrower which Lender may reasonably request. **Payment of Debts**. Pay and discharge when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which Borrower in good faith disputes. **Depository/Banking Services**. Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, as long as any Obligations are outstanding, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its Affiliates.

**Leases**. Borrower and Guarantor shall during the term of the Loan provide Lender with complete and correct executed copies of all tenant leases with respect to the Property, as well as any renewals or modifications thereof. All tenant leases and any renewals or modifications thereof shall be on commercially reasonable terms, and made in the ordinary course of business. Upon written notice from Lender, Lender reserves the right to reasonably approve any new tenant leases and/or modifications/renewals of existing tenant leases. Each new tenant in the Property shall promptly provide to Lender a written estoppel certificate and subordination, non-disturbance and attornment agreement in a form and content reasonably acceptable to Lender.

**NEGATIVE COVENANTS**. Borrower and Guarantor, as applicable, agree(s) that from the date of this Agreement and until final payment in full of the Obligations, unless Lender shall otherwise consent in writing, Borrower and Guarantor, as applicable, will not: **Change of Control**. Make or suffer a change of ownership or management of Borrower or Guarantor that effectively changes control of Borrower or Guarantor from its current ownership and management. **Corporate Documents**. Amend or change its bylaws, articles of incorporation, articles of

organization and/or operating agreement, as applicable. **Additional Indebtedness**. Create or incur any additional debts. **Additional Encumbrances**. Create, assume, or permit to exist any mortgage, security deed, deed of trust, pledge, lien, charge or other encumbrance on the Property, whether now owned or hereafter acquired, other than: (i) security interests required by the Loan Documents; (ii) liens for taxes contested in good faith; (iii) liens accruing by law for employee benefits; or (iv) Permitted Liens. **Merger: Disposition of Assets**. Borrower and any corporate Guarantor shall not (a) change its capital structure, (b) merge or consolidate with any entity, (c) amend or change its articles of organization and operating agreement, or (d) sell, lease, transfer or otherwise dispose of, or grant any person an option to acquire, or sell and leaseback, all or any substantial portion of the assets securing this Loan, whether now owned or hereafter acquired, except for (i) bona fide leases, upon commercially reasonable terms, in the ordinary course of business, and (ii) bona fide sales of inventory in the ordinary course of business and dispositions of property which is obsolete and not used or useful in its business. **Guarantees**. Borrower shall not guarantee or otherwise become responsible for the obligations of any other person or entity. **Default on Other Contracts or Obligations**. Default on any material contract with or obligation when due to Lender and/or any third party or default in the performance of any obligation to Lender and/or any third party incurred for money borrowed. **Government Intervention**. Permit the assertion or making of any seizure, vesting or intervention by or under authority of any government by which the management of Borrower or any Guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered**. Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of or debts due Borrower which is not otherwise released, resolved, satisfied or transferred to bond or other collateral within forty-five (45) days.

**COSTS AND EXPENSES**. Borrower shall pay all costs and expenses incurred in connection with preparation for, closing, and servicing the Loan including, without limitation, any appraisal fees, inspection fees, surveys, legal fees, including the fees of Lender's counsel, intangible taxes, documentary taxes, recording costs, license and permit fees, title insurance, tax service fee, casualty, flood and other insurance premiums that may be required or incurred. Any such fees which arise after closing of the Loan or which are recurring shall be paid upon demand by Lender, any such expenses may be deducted from the amount to be advanced from the Loan, and interest on such advances shall accrue thereon from the date of the Lender's payment of such expense item.

**TAXES**. Borrower and/or Guarantor (if applicable) shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

**FINANCIAL STATEMENTS.** Guarantor shall deliver to Lender, within 90 days after the close of each fiscal year, unaudited financial statements, certified to be true, correct, and accurate in all respects, reflecting Borrower's and Guarantor's operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement, and statement of cash flow, with supporting schedules; all on a consolidating basis in reasonable detail, prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year. Unaudited financial statements may be accepted by Lender if they bear an original signature or include a transmittal letter with an original signature of Borrower or Guarantor, as appropriate, or by the independent accountant who prepared the statement.

**TAX RETURNS.** Within 30 days of the due date for filing, Borrower and each Guarantor shall deliver to Lender a complete copy of their federal tax returns, including all statements and schedules attached thereto. Each return shall be signed and certified to be a true, correct, and is a complete copy of such tax return as filed. If an extension is filed, Lender shall be provided with a copy of the extension within 30 days of filing.

**ACCOUNTS RECEIVABLE.** Borrower shall provide to Lender, within 15 days of each quarter's end, internally prepared accounts receivable reports in form and content acceptable to Lender in Lender's sole discretion.

**FINANCIAL AND OTHER INFORMATION**. Borrower and Guarantor shall deliver to Lender such further information as Lender may reasonably request from time to time during the term of the Loan, including, without limitation, financial statements and all other information pertaining to Borrower's and/or each Guarantor's financial condition and the ownership and operation of the Property. Such information shall be certified by Borrower and Guarantors to be true, complete, and accurate in all respects.

**ORIGINATION FEE**. Borrower shall pay a one-time Origination Fee in the amount of $10,000.00 on the date of execution hereof.

**OTHER AMOUNTS DEEMED LOANS.** If Borrower fails to pay any tax, assessment, governmental charge or levy or to maintain insurance within the time permitted or required by this Agreement, or to discharge any Lien prohibited hereby, or to comply with any other Obligation, Lender may, but shall not be obligated to, pay, satisfy, discharge or bond the same for the account of Borrower, and to the extent permitted by law and at the option of Lender, all monies so paid by Lender on behalf of Borrower shall be deemed Obligations.

**AMERICANS WITH DISABILITIES ACT**. The term "ADA" means the Americans with Disabilities Act of 1990, Title III, §303(a)(1), 42 U.S.C. §12183, as it is amended from time to time, all rules and regulations promulgated thereunder, and any derivative or substitute law adopted by the United States of America or any state or governmental agency having jurisdiction, and any other laws or legal requirements regarding access and facilities for handicapped or disabled persons. The term "ADA", for the purpose of this Agreement, is intended to be broad and inclusive and to apply to all laws, rules and regulations relating to the subject matter as set forth in this paragraph. Borrower assumes all obligations of compliance with ADA and similar laws and ordinances relating to providing access to the Property to disabled persons imposed by federal, state, and local authorities that affect the Property or any business or other activity conducted thereon or therewith. Borrower has no knowledge of any violation of ADA in connection with the Property or as a result of any construction or operation and use of the Property. In connection with the construction on or operation and use of the Property, Borrower represents that, as of the date of this Agreement, Borrower has no knowledge of any failure to comply with ADA or similar local, state, and federal laws, regulations, and ordinances. Borrower agrees to immediately notify Lender if Borrower becomes aware of any violation of ADA or requirement that the Property come into compliance with ADA. At its own cost, Borrower will take all actions which are necessary to come into compliance with ADA or other remedial action required by applicable governmental or regulatory authorities. Borrower hereby agrees, jointly and severally, unconditionally, absolutely, and irrevocably, to indemnify, defend, and hold harmless Lender, its affiliates, successors, assigns, and the officers, directors, employees, and agents of Lender, against and in respect of: any loss, liability, cost, injury, expense, or damage of any and every kind whatsoever (including, without limitation, court costs and attorneys' fees and expenses) which at any time or from time to time may be suffered or incurred in connection with any inquiry, charge, claim, cause of action, demand, or lien made or arising directly or indirectly or in connection with, with respect to, or as a direct or indirect result of the Property's non-compliance with ADA, including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under Florida law, whether now known or unknown, including, without limitation: i) any costs, fees, or expenses incurred in connection with bringing the Property into compliance with ADA; or ii) any attorneys' fees, engineers' fees, and/or charges of any contractor or expert retained or consulted in connection with any inquiry, claim, or demand relating to non-compliance with ADA, including, without limitation, any costs incurred in connection with compliance with such inquiry, claim, or demand relating to noncompliance with ADA.

**FURTHER ASSURANCES**. Borrower shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to the Loan Documents and the transactions contemplated thereby.

**EVENTS OF DEFAULT**. Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, declare the Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto: (a) any failure to make any payment within 10 days of its due date, of principal or accrued interest on the Note or any other Obligation; (b) any representation or warranty of Borrower set forth in this Loan Agreement or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, the Note or any other Obligation shall be materially inaccurate or misleading; (c) Borrower or Guarantor shall fail to observe or perform any other term or condition of this Loan Agreement or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to the Note or any other Obligation, or Borrower and/or Guarantor shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for thirty (30) days after written notice from Lender of such default; (d) the dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing; (e) if any individual Guarantor shall die or be adjudged incompetent, provided, however, if within sixty (60) days thereof, a new guarantor acceptable to Lender in its sole and absolute discretion is provided (considering the obligations still outstanding under the Guaranty) or additional collateral in an amount acceptable to Lender exercising its reasonable discretion is provided, then this shall not be an event of default; (f) the creation of any lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or Guarantor hereof including, without limitation, any property deposited with Lender.; (g) in the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower or Guarantor that will affect their ability to repay the Obligations; (h) a commencement by the Borrower or Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower, or for any substantial part of the property of Borrower, or ordering the wind-up or liquidation of the affairs of Borrower; or the filing and pendency for thirty (30) days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or Guarantor of any general assignment for the benefit of creditors, or the failure of the Borrower or Guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or Guarantor in furtherance of any of the foregoing; (i) The breach by Borrower or Guarantor of any term, provision or condition contained in any lease.

**REMEDIES**. After the occurrence of an Event of Default, in addition to any other remedy permitted by law, Lender may at any time, without notice, apply the Collateral to the Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that the Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence In the future.

**DEFAULT WITHOUT ACCELERATION**. In the event of default for which the Lender does not accelerate the loan, including the failure of Borrower and Guarantor to provide financial statements or tax returns as required hereunder or under any separate loan agreement, the applicable loan interest rate, for a period beginning ten days after written notice of such default and ending upon the curing of said default, shall increase to the maximum interest

rate permitted by applicable law. Such default interest rates shall apply to the outstanding principal balance of the loan. Upon the curing of the default, the interest rate on the loan shall revert to the initially agreed upon interest rate effective on the date on which the default is cured.

**DEFINITIONS.** Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document. All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles. All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein: (a) "Loan Documents" means each and every document, affidavit or agreement executed by any party evidencing, guarantying or securing (or otherwise in connection with) any of the Obligations; and "Loan Document" means any one of the Loan Documents. (b) "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to Lender, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, letters of credit now or hereafter issued by Lender for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

*{acknowledgment signatures on following page}*

**IN WITNESS WHEREOF**, Borrower, Guarantor and Lender on the day and year first written above, have caused this Agreement to be executed under seal.

**BORROWER:**

FORENSIC STAT LABORATORY, INC.,
A FLORIDA CORPORATION

By:____________________________
Giancarlo Gasparini
Its: President

**GUARANTOR:**

GIANCARLO GASPARINI

By:____________________________
Giancarlo Gasparini

MADHUKAR SHARMA

By:____________________________
Madhukar Sharma

**LENDER:**

UBANK

By: ____________________
Print Name: ____________________
Its: ____________________