# <u>Composite Exhibit "E"</u>

# SECURITY AGREEMENT

**Forensic Stat Laboratory, Inc., a Florida corporation,** whose address is 8849 Canterbury Cove Court, Jacksonville, Florida 32256, County of Duval, State of Florida, as debtor ("Debtor"), being the owner and holder of the personal property described below in this Agreement ("Collateral"), and **UBank**, whose address is at 6120 S. Broadway Avenue, Tyler, Texas 75703, as secured party ("Secured Party"), agree as follows:

## COLLATERAL

Debtor hereby grants to Secured Party a security interest in and to:

A. All of the personal and other property described on **Exhibit "A"** attached to this Security Agreement.

For purposes of this Security Agreement, the assets described above are referred to as the "Collateral".

## OBLIGATIONS

This Security Agreement is executed by Debtor to secure performance of Debtor's obligations under that certain Revolving Promissory Note dated March 10, 2022, as modified by that certain Promissory Note (Commercial – Revolving Draw) dated March 10, 2023, as modified by that certain Promissory Note (Commercial - Revolving Draw) dated August 10, 2023, , as modified by that certain Promissory Note (Commercial - Revolving Draw) dated November 10, 2023, and as further modified by that certain Commercial Loan Note (Amended and Restated) of even date herewith, in the principal sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), executed by Debtor and payable to the order of Secured Party (the "Note"). The obligations of Debtor to make all payments, jointly and severally, under such Note, together with all costs of collection (if any) including reasonable attorney's fees and trustee's fees, are collectively referred to in this Agreement as the "Obligations". The Obligations shall include all extensions, renewals, rearrangements, or modifications of the herein above described Note(s) and any and all other indebtedness, liability and obligations whatsoever of whatever nature of Debtor to Secured Party, whether direct or indirect, absolute or contingent, primary or secondary, due or to become due, and whether now existing or hereafter arising and howsoever evidenced or acquired, whether joint or several, and Debtor acknowledges that the security interest hereby granted shall secure all future advances, as well as any and all other indebtedness, liabilities and Obligations of Debtor to Secured Party, now existing, or arising in the future.

## COVENANTS OF DEBTOR

A. Debtor shall pay to Secured Party any sum or sums due or which may become due on the Obligations secured hereby in accordance with the terms of such Obligations and the terms of this Security Agreement. Debtor shall pay to Secured Party on demand all expenses and expenditures, including reasonable attorney's fees and other legal expenses incurred or paid by Secured Party in exercising or protecting its interest, rights and remedies under this Security Agreement. Debtor shall pay immediately, without notice, the entire unpaid indebtedness of Debtor to Secured Party, whether created or incurred pursuant to this Security Agreement or otherwise, upon Debtor's default under this Security Agreement.

B. Secured Party shall have the power to endorse any instrument described as a portion of the "Collateral" above and Debtor hereby grants to Secured Party a limited power of attorney, deemed coupled with an interest, for the purposes of endorsing in the name of Debtor any such instrument or document constituting Collateral or which may be received in payment for or as proceeds of the Collateral.

C. Upon demand by Secured Party, Debtor will deliver additional Collateral to Secured Party if Secured Party deems the Collateral then held to be insufficient to secure the Obligations.

D. Debtor authorizes Secured Party, without the necessary joinder by Debtor, to file in all jurisdictions where this authorization will be given full force and effect, one or more Financing Statements, executed only by Secured Party, covering all or any portion of the Collateral. At the request of Secured Party, Debtor covenants to join Secured Party in executing one or more of such Financing Statements under the terms and provisions of the Florida Uniform Commercial Code (F.S. Chapters 670-680), which Financing Statements will be in a form and content acceptable to Secured Party and Debtor covenants to pay the cost of filing all such Financing Statements, to the extent such filing is deemed by Secured Party to be necessary or desirable, but Debtor's failure to execute any such Financing Statement shall not affect the contents thereof or the Obligation of Debtor hereunder.

**REPRESENTATIONS AND WARRANTIES OF DEBTOR**

Debtor represents, warrants and agrees that:

A. Debtor owns the Collateral herein described and has the right to transfer any interest therein; the Collateral is not subject to the interest of any third party; and Debtor will defend the Collateral and its proceeds against the claims and demands of all third parties.

B. Secured Party's duty with reference to the Collateral shall be solely to use reasonable care in the custody and preservation of the Collateral in Secured Party's possession.

C. Demand, notice, protest and all demands and notices of any action taken by Secured Party under this Security Agreement or in connection with the Obligations secured hereby, except as otherwise provided in this Security Agreement, are hereby waived, and any indulgence of Secured Party, substitution for, exchange of or release of Collateral, in whole or in part, or addition or release of any person liable on the Collateral is assented and consented to.

D. Secured Party shall not be responsible in any way for any depreciation in the value of the Collateral, nor shall any duty or responsibility whatsoever rest upon Secured Party to take necessary steps to preserve rights against prior parties or to enforce collection of the Collateral by legal proceedings or otherwise, the sole duty of Secured Party, its successors and assigns, being to receive collections, remittances and payments on such Collateral as and when made and received by Secured Party, and at Secured Party's option, applying the amount or amounts so received after deduction of any collection costs incurred, as payment upon any obligation of Debtor to Secured Party pursuant to the provisions of this Security Agreement, or holding the same for the account and order of Debtor.

E. The address of Debtor, designated herein above, is a current address of Debtor and Debtor agrees that Debtor will not change such address without prior written notice to Secured Party.

F. Debtor agrees to execute such powers of attorney, pledge agreements, endorsements of securities or other instruments, or other documents which may be reasonably required by Secured Party in order to effectively grant to Secured Party the security interest in and to the Collateral herein above described and to enforce Secured Party's rights regarding same in accordance with the provisions of the Florida Uniform Commercial Code (F.S. Chapters 670-680), or otherwise.

## EVENTS OF DEFAULT

Debtor shall be in default under this Security Agreement upon the happening of any of the following events or conditions (referred to in the Agreement as an "Event of Default"):

A. Any default under the Note, that certain Mortgage and Security Agreement of even date (if applicable), or other Loan Documents that remain uncured after notice, if applicable.

B. Default by Debtor in the punctual performance of any of the Obligations, covenants, terms or provisions contained or referred to in this Security Agreement or the Obligations or any part thereof.

C. The making of any levy on or seizure or attachment of any of the Collateral.

D. Secured Party's determination that the value of the Collateral has been impaired, as a result of the action of Debtor, or any third person, or that the value of such Collateral is insufficient, as a result of economic circumstances, to adequately secure Secured Party's interest and ensure payment of the Obligation to Secured Party as contemplated hereby, coupled with failure of Debtor to deliver to Secured Party additional Collateral as contemplated in Section III above.

E. The granting by Debtor of any security interest in the Collateral or any portion thereof to any third party without the prior written consent of Secured Party (which security interest, if granted, shall, in all events, be secondary, inferior and subordinate to the security interest granted herein).

F. The receipt by Debtor of any notice by any taxing authority of such authority's intent to place or fix a lien on part or all of the Collateral.

## AUTHORITY OF SECURED PARTY

A. This Security Agreement, Secured Party's rights hereunder, or the Obligations secured hereby may be assigned from time to time, and in any such case the Assignee shall be entitled to all of the rights, privileges and remedies granted in this Security Agreement to Secured Party, and Debtor will assert no claims or defenses Debtor may have against Secured Party or against the Assignee except those granted in this Security Agreement.

B. Secured Party may at any time transfer the Collateral to itself or its nominee, receive income, including money, thereon and hold the income as Collateral or apply the income to the indebtedness secured hereby, the manner and distribution of the application to be in the sole discretion of Secured Party.

C. Secured Party may at any time demand, sue for, collect or make any compromise or settlement with reference to the Collateral as Secured Party, in its sole discretion, chooses.

D. Secured Party may delay exercising or omit to exercise any right or remedy under this Security Agreement without waiving that or any other past, present, or future right or remedy, except in writing signed by Secured Party.

## REMEDIES OF SECURED PARTY

Upon the occurrence of an Event of Default, and at any time thereafter:

A. Secured Party may declare the Obligations secured hereby immediately performable.

B. Secured Party shall have, then or at any time thereafter, the rights and remedies provided in the Uniform Commercial Code in force in the State of Florida at the date of execution of this Security agreement.

C. In addition to the rights and remedies referred to above, Secured Party may, in its discretion, sell, assign and deliver all or any part of the Collateral at any public or private sale without notice or advertisement, and bid and become purchaser at any public sale or at any Broker's Board.

D. If notice to Debtor is required by the Uniform Commercial Code of Florida of public or private sale of Collateral, Secured Party may give written notice to Debtor five days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made, by mailing such notice to Debtor at the address designated at the beginning of this Security Agreement. Secured Party may apply the proceeds of any disposition of Collateral available for satisfaction of the Obligations and expenses of sale in any order of preference which Secured party, in its sole discretion, chooses. Debtor shall remain liable for any deficiency.

E. Upon any sale of any portion of the Collateral, Secured Party shall have the right to deliver to the purchaser thereof all or any portion of the Collateral, free and clear of any claim or right of Debtor, or any person claiming by, through or under Debtor. The Collateral may be sold separately or combined with the collateral of other debtors as Secured Party deems necessary or desirable.

F. Secured Party shall not be obligated to make any sale pursuant to any notice of sale herein provided and Secured Party may, without notice or publication, adjourn any public or private sale or cause such sale to be adjourned, from time to time, by written or oral announcement, given at the time and place fixed for such sale and may reconvene such sale, pursuant to such notice of adjournment, at any time or place designated by Secured Party in such announcement.

G. In case of sale of all or any portion of the Collateral, on credit or for future delivery, Secured Party shall be authorized to retain the Collateral until the purchase price is paid by the purchaser thereof, or to deliver such Collateral to the purchaser, on credit, but Secured Party shall incur no liability for the failure of any such purchaser to pay for such Collateral so sold and, in the event such purchaser fails to pay for such Collateral so sold, Secured Party may repossess such Collateral and again offer it for sale in accordance with the terms and provisions of this Security Agreement.

H. Secured Party shall not be required to conduct any sale of any of the Collateral, pursuant to this Security Agreement, and shall be authorized to proceed with collection of the Obligations from Debtor by all legal means including, but not limited to, institution of a suit in a court of competent jurisdiction for collection of the Obligations.

**MISCELLANEOUS PROVISIONS**

A. "Secured Party" and "Debtor" as used in this instrument shall include the heirs, executors, administrators, legal representatives, successors and assigns of such parties, including without limitation, receivers, trustees or guardians of such parties.

B. Terms used in this instrument which are defined in the Florida Uniform Commercial Code (F.S. Chapters 670-680) are intended hereby to be used with the meanings therein defined.

C. The term "Loan Documents" as used in this Agreement, is as defined in the Loan Agreement.

D. The provisions of this Agreement shall be construed under and in accordance with the provisions of the laws of the State of Florida, including, without limitation, the Florida Uniform Commercial Code (F.S. Chapters 670-680). Debtor agrees that the state and federal courts in the County where the Secured Party is located shall have

exclusive jurisdiction over all matters arising out of this Security Agreement, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

E. No delay or omission, on the part of Secured Party, to exercise any of Secured Party's rights hereunder, shall operate as a waiver of any such right. No acceptance by Secured Party of any payment after the due date thereof shall be deemed to be a waiver by Secured Party of the provisions for event of default hereunder.

F. The security interest granted hereby, and all of the terms and provisions contained herein, shall be deemed to constitute a continuing security interest and shall remain in full force and effect, as between the parties, until the repayment by Debtor of all of the Obligations as set forth herein and the receipt, acceptance and acknowledgment of such payment on the part of Secured Party, coupled with Secured Party's revocation of the terms and provisions of this Security Agreement.

G. Any notice or demand given by Secured Party to Debtor in connection with this Security Agreement, the Collateral or the Obligations, shall be deemed given and effective three days after deposit in the United States mail, postage prepaid, certified mail return receipt requested, addressed to Debtor at the address of Debtor designated herein (subject to Debtor's right to change notice of address pursuant to the provisions of this Agreement) and Debtor shall be conclusively deemed to have received any notice so deposited. In lieu of deposit of any notice in the United States mail, Secured Party may personally deliver such notice to Debtor.

H. The terms and provisions of this Security Agreement may not be altered, amended or modified unless a written instrument has been executed by Debtor and Secured Party, which instrument specifically refers to this Security Agreement and which instrument clearly indicates that it is intended to alter, amend or modify this Agreement.

I. This Security Agreement and the security interest herein granted are given in addition to, and not in substitution of or in lieu of any prior or contemporaneous Security Agreement, security interest, pledges or assignments given to Secured Party by Debtor, or a person designated by Debtor. All powers, rights and remedies of Secured Party in any other such Security Agreement are deemed to be cumulative with the powers, rights and remedies of Secured Party as set forth herein.

J. If any provision of this Security Agreement should be found, for any reason, to be invalid or unenforceable under the laws of the State of Florida, or any other state or governmental unenforceable provision shall be deleted from the provisions of this Agreement and this Agreement shall be, thereafter, construed and enforced without consideration of such invalid or unenforceable provision.

K. This Security Agreement may be executed in any number of counterparts, all of which together shall constitute one and the same instrument. Debtor agrees and consents that any photocopy or other reproduction of any Financing Statement executed by Debtor is sufficient to constitute a valid and enforceable Financing Statement for all purposes, without limitation, for filing in any jurisdiction where the filing of such copy shall be permitted by the provisions of the Uniform Commercial Code of such jurisdiction.

L. The parties agree that time is of the essence to each of the provisions of this Security Agreement.

*{acknowledgment signatures on following pages}*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of this ___ day of __________, 2024.

**DEBTOR:**

FORENSIC STAT LABORATORY, INC.,
A FLORIDA CORPORATION

By: ______________________
Giancarlo Gasparini
Its: President

STATE OF FLORIDA
COUNTY OF Miami Dade

Acknowledged before me by means of [x] physical presence or [ ] online notarization, in the State and County aforesaid this 27 day of March, 2024, by Giancarlo Gasparini, as President of Forensic Stat Laboratory, Inc., a ~~Florida corporation. He is personally~~ known to me or has produced G216280941886 identification.

State of Florida [illegible] 03 day of 27 2025 [illegible] G. [illegible] who personally appeared [illegible]
Rajkumar Agarwal

(AFFIX NOTARIAL SEAL)

Rajkumar Agarwal
Comm.: # HH 306796
Expires: September 25, 2026
Notary Public - State of Florida

______________________
Notary Public, State of Florida
Name: RAJKUMAR AGARWAL

**SECURED PARTY:**

UBANK

By: 
Print Name: Kyle Johnston
As its: Market President

STATE OF ~~FLORIDA~~ Texas
COUNTY OF ~~Miami Dade~~ Smith

Execution of the foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this 16th day of March 2024, by Kyle Johnston, as Market President of UBank, who is either personally known to me or has produced G21628094188O as identification.

(AFFIX NOTARIAL SEAL)

Rajkumar Agarwal
Comm.: # HH 306796
Expires: September 25, 2026
Notary Public - State of Florida

Notary Public, State of Florida
Name: ~~RAJKUMAR AGARWAL~~ Ashton Quintero

ASHTON QUINTERO
My Notary ID # 130972394
Expires January 20, 2025

**EXHIBIT "A"**

**ALL BUSINESS ASSETS**

Description of Collateral:

a) All equipment and machinery owned by Debtor, including, but not limited to all equipment or machinery acquired and/or purchased by Debtor (and all accessions thereto) with the proceeds, in whole or in part, received by Debtor from Secured Party.

b) All fixtures and articles of property owned by Debtor and now or hereafter attached to, or used or adapted for use in the operation of Debtor's business, including without limitation all heating, cooling, air conditioning, ventilating, refrigerating, plumbing, generating, power/ lighting, laundry, maintenance, incinerating, lifting, cleaning, fire prevention and extinguishing, security and access control, cooking, gas, electric and communication fixtures, equipment and apparatus, all engines, motors, conduits, pipes, pumps, tanks, ducts, compressors, boilers, water heaters and furnaces, all ranges, stoves, disposals, refrigerators, dishwashers, and other appliances, all furniture, cabinets, partitions, mantels, built in mirrors, window shades, blinds, screens, awnings, storm doors, windows and sash, all carpeting, underpadding and draperies, all equipment, and all furnishings of public and private spaces, offices, halls and lobbies.

c) All accounts, accounts receivable, contract rights, leases, and any other rights of Debtor to payment for goods sold or leased or for services rendered; furniture; furnishings; fixtures; equipment; machinery; accessories; movable trade fixtures; goods held for sale or being processed for sale in Debtor's business, including all raw materials, supplies, and other materials used consumed in Debtor's business, goods in process, finished goods, and all items customarily classified as inventory, as well as all parts, replacements, substitutions, profits, products and cash and non-cash proceeds of the foregoing (including insurance and condemnation proceeds payable by reason of condemnation of or loss of damage thereto) in any form and wherever located.

d) All general intangibles (including, without limitation, all contract rights, tax refunds and tax refund claims, choses in action, causes of action, corporate or other business records, invention, design, patents, patent applications, trademarks, trade names, trade secrets, goodwill, copyrights, registrations, licenses, franchises, claims under guaranties, security interests or other security held or granted to secure payment of contract by account debtors, all rights to indemnification and all other intangible property of every kind and nature).

e) All instruments, documents, chattel paper, goods, moneys, securities, drafts, and other property of Debtor now in possession of and at any time and from time to time hereafter delivered to Secured Party , its agent of affiliates, whether for safekeeping, pledge, custody, transmission, collection, or otherwise, and all of Debtor's deposits, balances, sums, proceeds, and credit with, and any of its claims against Secured Party and affiliates of Secured Party , at any time existing, together with the increases and profits received therefrom and the proceeds thereof, including insurance payable because of loss or damage thereto.

f) All electronic chattel paper, investment property, deposit accounts, and letter of credit rights now owned or hereto acquired by Debtor.

g) All other personal property, assets and fixtures of Debtor of every kind and nature including, without limitation, all accounts, equipment, accessions, fixtures, inventory, chattel paper, instruments,

investment property, documents, letter-of-credit rights, deposit accounts and general intangibles, wherever located.

h) All products and proceeds of all of the foregoing.

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is November 10, 2023. The parties and their addresses are:

**SECURED PARTY:**
**UBANK**
6120 S Broadway Ave
Tyler, TX 75703

**DEBTOR:**
**FORENSIC STAT LABORATORY, INC.**
a Florida Corporation
8849 Canterbury Cove Court
Jacksonville, FL 32256

**Definitions.** For the purposes of this document, the following terms have the following meanings.

"Line of Credit" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. [redacted]4137, dated November 10, 2023, from me to you, in the amount of $2,000,000.00.

**B. All Debts.** All present and future debts from me to you, even if this Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Agreement. Nothing in this Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**C. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. LIMITATIONS ON CROSS-COLLATERALIZATION.** The cross-collateralization clause on any existing or future loan, but not including this Line of Credit, is void and ineffective as to this Line of Credit, including any extension or refinancing.

The Line of Credit is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**3. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited

to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**4. PROPERTY DESCRIPTION.** The Property is described as follows:

**A. All Assets.** All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds, products, additions, accessions, substitutions and replacements of the foregoing property.

Any term used herein is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**B. Accounts and Other Rights to Payment.** All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance. This includes any rights and interests (including all liens and security interests) which I may have by law or agreement against any Account Debtor or obligor of mine. "Account" means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State. The term includes health-care-insurance receivables. The term "Accounts" does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letters of credit or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card. The term "Accounts" is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**C. Equipment.** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the Property, but such a list is not necessary for a valid security interest in my equipment. "Equipment" means goods other than inventory, farm products, or consumer goods. The term "Equipment" is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

**5. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am an entity organized and registered under the laws of Texas. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**6. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**D. Additional Duties Specific to Accounts.** I will not settle any Account for less than its full value without your written permission. Until you tell me otherwise, I will collect all Accounts in the ordinary course of business. I will not dispose of the Accounts by assignment without your prior written consent. I will keep the proceeds from all the Accounts and any goods which are returned to me or which I take back. I will not commingle them with any of my other property. I will deliver the Accounts to you at your request. If you ask me to pay you the full price on any returned items or items retaken by me, I will do so. I will make no material change in the terms of any Account, and I will give you any statements, reports, certificates, lists of Account Debtors (showing names, addresses and amounts owing), invoices applicable to each Account, and other data in any way pertaining to the Accounts as you may request.

**7. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

**8. COLLATERAL PROTECTION INSURANCE. Property Insurance is required.** I agree to buy insurance on the Property in the amount you specify, subject to applicable law. **I shall have the option of furnishing any required insurance either through existing policies of insurance owned or controlled by me or procuring and furnishing the equivalent coverage through any insurance company authorized to do business in Texas or an eligible surplus line insurer to the extent permitted by law.** I will

name you as loss payee under the policy. I may be required to deliver to you a copy of the collateral protection insurance policy and proof of payment of premiums.

If I fail to meet any of these requirements, you may obtain collateral protection insurance on my behalf. You are not required to purchase any type or amount of insurance. To the extent permitted by law, you may obtain insurance that will cover either the actual amount of unpaid indebtedness or the replacement cost of improvements, subject to policy limits. If you purchase insurance for the Property, I will be responsible for the cost of that insurance, including interest and any other charges incurred by you in connection with the placement of collateral protection insurance to the extent permitted by law. I understand that insurance you obtain may cost significantly greater than the cost of insurance I could have obtained. Amounts that I owe are due and payable upon demand or on such other terms as you require to the extent permitted by law.

**9. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

**A.** demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

**B.** enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

**C.** file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

**D.** compromise, release, extend, or exchange any indebtedness of an Account Debtor.

**E.** take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

**F.** endorse all payments by any Account Debtor which may come into your possession as payable to me.

**G.** deal in all respects as the holder and owner of the Account Debtors' obligations.

**10. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

**A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

**B.** pay any rents or other charges under any lease affecting the Property.

**C.** order and pay for the repair, maintenance and preservation of the Property.

**D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

**E.** place a note on any chattel paper indicating your interest in the Property.

**F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

**G.** handle any suits or other proceedings involving the Property in my name.

**H.** prepare, file, and sign my name to any necessary reports or accountings.

**I.** make an entry on my books and records showing the existence of this Agreement.

**J.** notify any Account Debtor or Obligor of your interest in the Property and tell the Account Debtor or Obligor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control

over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**11. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Texas Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**15. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering all of my personal Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**16. APPLICABLE LAW.** This Agreement is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Texas, unless otherwise required by law.

**17. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my successors and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**20. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**DEBTOR:**

Forensic Stat Laboratory, Inc.

DocuSigned by:

By *Madhukar Sharma* Date 12/29/2023
Madhukar Sharma, Member

**SECURED PARTY:**

UBank

DocuSigned by:

By Kristi Johnston Date 12/29/2023

Kristi Johnston, VP Commercial Lender