**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22594-BLOOM/Elfenbein**

UBANK,

     Plaintiff,

v.

FORENSIC STAT LABORATORY INC.,
MADHUKAR SHARMA, and GIANCARLO
GASPARINI,

     Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff UBank's ("UBank") Motion for Summary Judgment Against Defendants as to Counts I, II, III, IV, and VI Only ("Motion"), ECF No. [42]. Defendants have failed to respond to the Motion. The Court has carefully reviewed the Motion, the record, and is otherwise fully advised. For the reasons that follow, UBank's Motion is granted.

## I.  BACKGROUND[1]

### A.  The Promissory Note

UBank is a Texas state-charted bank. ECF No. [43] ¶ 1. On or about March 10, 2022, Defendant Forensic Stat Laboratory Inc. ("Forensic Stat") executed a Revolving Promissory Note in the principal amount of $2,000,000.00 in favor of UBank, bearing a maturity date of March 10, 2023 and evidencing a commercial loan by UBank to Forensic Stat (the "March 2022 Note"). *Id.* ¶ 6. UBank is the owner and holder of the March 2022 Note. *Id.* ¶ 7.

---

[1] UBank's material facts are deemed undisputed, as Defendants failed to file responsive statements of material facts. *See* S.D. Fla. L.R. 56.1(c). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion for Summary Judgment, ECF No. [42], and the Bell Affidavit, ECF No. [43-1].

The March 2022 Note provides that upon default, UBank may declare the entire unpaid principal and interest "to be immediately due and payable without notice or demand." *Id.* ¶ 8. The March 2022 Note further provides that UBank is entitled to recover from Forensic Stat all of its "costs of collection," including attorneys' fees, in the event of a default. *Id.* The March 2022 Note also contains a waiver provision for Forensic Stat and any of its sureties or guarantees, stating that UBank need not make any demand, notice of default, or equivalent to trigger its rights to recover. *Id.*

On or about March 10, 2023, Forensic Stat executed a Promissory Note in favor of UBank, in the principal amount of $2,000,000.00 (the "March 2023 Note"). *Id.* ¶ 9. The March 2023 Note modified the March 2022 Note, extending its maturity date to June 10, 2023. *Id.* UBank is the owner and holder of the March 2023 Note. *Id.* ¶ 10.

On or about June 10, 2023, Forensic Stat executed a Debt Modification Agreement, modifying the March 2023 Note by extending the maturity date to August 10, 2023 (the "June 2023 Debt Modification Agreement"). *Id.* ¶ 11. UBank is the owner and holder of the June 2023 Debt Modification Agreement. *Id.* ¶ 12.

On or about August 10, 2023, Forensic Stat executed a Promissory Note in favor of UBank, in the principal amount of $2,000,000.00 (the "August 2023 Note"). *Id.* ¶ 13. The August 2023 Note modified the March 2022 Note and the June 2023 Debt Modification Agreement, extending the maturity date to November 10, 2023. *Id.* UBank is the owner and holder of the August 2023 Note. *Id.* ¶ 14.

On or about November 10, 2023, Forensic Stat executed a Promissory Note in favor of UBank, in the principal amount of $2,000,000.00 (the "November 2023 Note"). *Id.* ¶ 15. The November 2023 Note modified the March 2022 Note, the June 2023 Debt Modification

Agreement, and the August 2023 Note, extending the maturity date to January 10, 2024. *Id*. UBank is the owner and holder of the November 2023 Note. *Id.* ¶ 16.

On or about January 10, 2024, Forensic Stat executed a Commercial Loan Note in favor of UBank, in the principal amount of $2,000,000.00, which modified the March 2022 Note, the June 2023 Debt Modification Agreement, the August 2023 Note, and the November 2023 Note, extending the maturity date to January 10, 2028 (the "2024 Commercial Loan Note"). *Id.* ¶ 17. UBank is the owner and holder of the 2024 Commercial Loan Note. *Id.* ¶ 18.

The 2024 Commercial Loan Note includes a few key provisions. First, it states that the commercial loan "shall continue to be governed by the terms and conditions of the Loan Documents previously executed by and among Borrower and Lender in connection with the Original Note, as modified from time to time, and as amended and restated on even date." *Id.* ¶ 19. Second, it provides that any modification or waiver of Forensic Stat's obligations or UBank's rights under the note at issue "must be contained in writing signed by" UBank. *Id.* ¶ 20. Third, it contains a waiver provision stating that UBank need not make any demand, notice of default, or equivalent. *Id.* ¶ 21.

On or about June 28, 2024, Forensic Stat executed a Debt Modification Agreement to modify the payment terms under the Commercial Loan Note (the "June 2024 Modification Agreement"). *Id.* ¶ 22. The Bank is the owner and holder of the June 2024 Modification Agreement. *Id.* ¶ 23. The 2024 Commercial Loan Note, as modified by the June 2024 Modification Agreement, is the operative promissory note by Forensic Stat and in favor of UBank (the "Promissory Note" or "Note"). *Id.* ¶ 25.

### B.  Security Agreement

On or about March 10, 2022, to secure payment on the March 2022 Note, Forensic Stat executed a Security Agreement in favor of UBank, according to which Forensic Stat granted

UBank "a security interest in all assets, accounts, rights to payment, equipment, and other personal property of" Forensic Stat (the "March 2022 Security Agreement"). *Id.* ¶ 26. The March 2022 Security Agreement provides, *inter alia*, that in the event UBank seeks via judicial process to take possession of any or all of the relevant collateral, Forensic Stat "irrevocably waive[s] any bonds[,] any surety[,] or security relating thereto that may be required by applicable law as an incident to such possession, and waives any demand for possession prior to the commencement of any such suit or action." *Id.* ¶ 27. UBank is the owner and holder of the March 2022 Security Agreement. *Id.* ¶ 28.

On March 24, 2022, to perfect its security interest in Forensic Stat's personal property, UBank filed a UCC-1 Financing Statement in the Florida Secured Transactions as Instrument Number 202200942972 (the "UCC-1"). *Id.* ¶ 29.

On or about March 10, 2023, as part of the execution of the March 2023 Note, Forensic Stat executed a Security Agreement in favor of UBank (the "March 2023 Security Agreement"). *Id.* ¶ 30. On November 10, 2023, Forensic Stat executed a Security Agreement in favor of UBank, as part of the execution of the November 2023 Note (the "November 2023 Security Agreement"). *Id.* ¶ 32. UBank is the owner and holder of the March 2023 Security Agreement and November 2023 Security Agreement. *Id.* ¶¶ 31, 33.

In connection with the 2024 Commercial Loan Note, Forensic executed a Security Agreement which granted UBank "a security interest in all assets, accounts, rights to payment, equipment, and other personal property of" Forensic Stat (the "January 2024 Security Agreement"). *Id.* ¶ 34. UBank and is the owner and holder of the January 2024 Security Agreement. *Id.* ¶ 35.

The January 2024 Security Agreement, along with the UCC-1, is the operative security agreement. *Id.* ¶ 36. The January 2024 Security Agreement provides, first, that Forensic Stat shall be in default upon any default on the Note. *Id.* ¶ 37. In the event of a default, UBank is entitled to declare the obligations secured by the January 2024 Security Agreement "immediately performable." *Id.* UBank shall have the "rights and remedies provided in the Uniform Commercial Code in force in the State of Florida," along with the right to "sell, assign and deliver all or any part of the Collateral." *Id.* UBank may apply the proceeds from any such disposition of collateral to the satisfaction of the Note and the expenses of sale in any order, and Forensic Stat would remain liable for any deficiency. *Id.* The security interest granted by the January 2024 Security Agreement remains in "full force and effect . . . until the repayment by [Forensic Stat] of all of the Obligations" and UBank's receipt, acceptance, and acknowledgement of such payment. *Id.*

### C.  Loan Agreement

On January 10, 2024, Forensic Stat and Madhukar Sharma ("Sharma") and Giancarlo Gasparini ("Gasparini") (together, the "Guarantors") executed an Amended and Restated Loan Agreement in favor of UBank ("January 2024 Loan Agreement"). *Id.* ¶ 38. UBank is the owner and holder of the January 2024 Loan Agreement. *Id.* ¶ 39.

### D.  The Guarantees

On or about March 10, 2022, to secure payment on the March 2022 Note, the Guarantors executed an Unlimited Guaranty guaranteeing payment of all amounts due and owing under the March 2022 Note and subsequent modifications (the "March 2022 Guaranty"). *Id.* ¶ 40. UBank is the owner and holder of the March 2022 Guaranty. *Id.* ¶ 41. The March 2022 Guaranty provides that Sharma and Gasparini guaranteed to UBank "the due and punctual payment and performance of the Obligations." *Id.* ¶ 42. It also contains a waiver of notice provision, a requirement that modifications be in writing and signed, a provision that Guarantors would reimburse UBank for

its reasonable attorneys' fees in obtaining payment or performance, and a provision establishing joint and several liability. *Id.*

On or about March 10, 2023, to secure payment on the March 2023 Note, Sharma executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the March 2023 Note and subsequent modifications (the "Sharma's March 2023 Guaranty"). *Id.* ¶ 43. The same day and for the same purpose, Gasparini executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the March 2023 Note and subsequent modifications (the "Gasparini's March 2023 Guaranty"). *Id.* ¶ 45. UBank is the owner and holder of Sharma's March 2023 Guaranty and Gasparini's March 2023 Guaranty. *Id.* ¶¶ 44, 46.

In connection with the June 2023 Modification Agreement, the Guarantors executed a Notice and Consent to Modification and Confirmation of Guaranty by Guarantor, stating Sharma and Gasparini consent to the June 2023 Modification Agreement and their prior guarantees remain in full force and effect (the "Guarantors' June 2023 Notice and Consent to June 2023 Modification"). *Id.* ¶ 47. UBank is the owner and holder of the Guarantors' June 2023 Notice and Consent to June 2023 Modification. *Id.* ¶ 47.

On or about August 10, 2023, to secure payment on the August 2023 Note, Sharma executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the August 2023 Note and subsequent modifications (the "Sharma's August 2023 Guaranty"). *Id.* ¶ 49. The same day and for the same purpose, Gasparini executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the August 2023 Note and subsequent modifications (the "Gasparini's August 2023 Guaranty"). *Id.* ¶

51. UBank is the owner and holder of Sharma's August 2023 Guaranty and Gasparini's August 2023 Guaranty. *Id.* ¶¶ 50, 52.

On or about November 10, 2023, to secure payment on the November 2023 Note, Sharma executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the November 2023 Note and subsequent modifications (the "Sharma's November 2023 Guaranty"). *Id.* ¶ 53. The same day and for the same purpose, Gasparini executed a Guaranty (Continuing Debt – Unlimited), guaranteeing payment of all amounts due and owing under the November 2023 Note and subsequent modifications (the "Gasparini's November 2023 Guaranty"). *Id.* ¶ 55. UBank is the owner and holder of Sharma's November 2023 Guaranty and Gasparini's November 2023 Guaranty. *Id.* ¶¶ 54, 56.

To secure payment on the January 2024 Commercial Loan Note, Sharma executed a Guaranty on January 10, 2024, guaranteeing payment of all amounts due and owing under the January 2024 Commercial Loan Note and subsequent modifications (the "Sharma's 2024 Guaranty"). *Id.* ¶ 57. The same day and for the same purpose, Gasparini executed a Guaranty, guaranteeing payment of all amounts due and owing under the January 2024 Commercial Loan Note and subsequent modifications (the "Gasparini's 2024 Guaranty"). *Id.* ¶ 59. UBank is the owner and holder of Sharma's 2024 Guaranty and Gasparini's 2024 Guaranty. *Id.* ¶¶ 58, 60. The Guarantees provide that no modification or waiver shall be binding on UBank unless in writing and signed by UBank. *Id.* ¶ 61.

### E.  Default and Amounts Due

On July 15, 2024, August 10, 2024, September 10, 2024, October 10, 2024, and subsequent months thereafter, Forensic Stat failed to make the regularly scheduled monthly payments owed under the Note, thereby defaulting under the Note. *Id.* ¶ 62.  On October 30, 2024, UBank provided Defendants a Notice of Default in which UBank identified events of default under the loan

documents and demanded cure (the "Notice of Default"). *Id.* ¶ 63. Defendants failed to cure the defaults as demanded in the Notice of Default. *Id.* ¶ 64. As a result:

> UBank elected to accelerate the obligations due and owing under the Promissory Note and demanded full and immediate payment of all of the obligations under the Promissory Note to the Bank (including, without limitation, the entire unpaid balance together with accrued interest and attorneys' fees and costs incurred by UBank) pursuant to the letter sent on behalf of UBank to the Defendants dated October 30, 2024.

*Id.*

Notwithstanding the acceleration and demand upon Defendants to pay all amounts due and owing under the Note, Defendants failed and continue to fail to pay. *Id.* ¶ 65. Under the Note, Security Agreement, and Guarantees, UBank alleges that Defendants now owe principal balance of $1,931,584.18, accrued interest, late fees, an appraisal fee, plus legal fees and costs incurred by UBank. *Id.* ¶ 66.

### F.  The Collateral, Replevin, and Foreclosure

UBank owns and holds the January 2024 Security Agreement and holds a first-priority perfected lien on the Collateral pursuant to the January 2024 Security Agreement and UCC-1. *Id.* ¶ 73. The Note is secured by the January 2024 Security Agreement, which encumbers certain personal property owned by Forensic Stat, including equipment and machinery; personal property, assets, and fixtures, and all products and proceeds of the foregoing (the "Personal Property"). *Id.* ¶ 74. UBank filed the UCC-1 to perfect its security interest in Forensic Stat's Personal Property. *Id.* ¶ 75. In connection with the loan application, Forensic Stat represented to UBank that it was in possession of certain Equipment. *Id.* ¶ 76. As to a foreclosure of the Equipment and Personal Property, Sharma—individually and on behalf of Forensic Stat—testified that he would not be opposed to a foreclosure process of the collateral in service of the debt to UBank. *Id.* ¶ 82.

8

### G.  The Lawsuit

On June 6, 2025, UBank filed the instant lawsuit, asserting six claims: Count I (Breach of Note against Forensic Stat), Count II (Breach of Security Agreement against Forensic Stat),  Count III (Breach of Guaranty against Sharma), Count IV (Breach of Guaranty against Gasparini), Count V (Fraudulent Transfer of Collateral against Defendants), and Count VI (Foreclosure and/or Replevin of Personal Property against Forensic Lab). On April 22, 2026, UBank filed its Motion for Summary Judgment, seeking summary judgment on Counts I, II, III, IV, and VI. ECF No. [42]. Defendants did not file a timely response. The Court gave Defendants additional time in which to respond, ECF No. [45], and Defendants again failed to respond to the Motion.

## II.  LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 24–48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

## III.   DISCUSSION

UBank argues this case is straightforward: "UBank loaned money to Forensic [Stat] pursuant to certain promissory note, as amended, which was secured by a security interest in, among other things, Forensic[ Stat]'s inventory and equipment. [] Sharma and [] Gasparini further secured the note with unconditional and unlimited guarantees, respectively." ECF No. [42] at 2. The material undisputed facts, UBank says—including Defendants' own admissions, UBank's supporting Declarations, and the lack of any evidence supporting Defendants' affirmative defenses—warrant summary judgment on Counts I, II, III, IV, and VI as to breach of the promissory note, breach of the security agreement, breach of the guarantees, and foreclosure. *Id*. The Court addresses each Count in turn.

### A.  Count I: Breach of Note

UBank argues that the Note is a valid and enforceable contract and points out that Defendants, in their Answer, ECF No. [17], do not dispute that they entered into the Note and other loan documents with UBank. *Id.* at 4. Furthermore, UBank argues, Forensic Stat breached the Note, as the undisputed record evidence shows that Forensic Stat failed to make the monthly payments due on July 15, 2024, August 10, 2024, September 10, 2024, and October 10, 2024 and all subsequent payments and failed to cure such default upon UBank's demand. *Id.* at 5.

The Court agrees. Under Florida law, to prove the existence of a contract, the party seeking to enforce the contract must prove by a preponderance of the evidence: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Here, UBank has done so. The Note at issue was signed by Forensic Stat, ECF No. [43-1] at 53, and as UBank points out, Forensic Stat's Answer does not deny that they entered into the Note and associated loan documents. *See generally* ECF No. [17]. Thus, offer and acceptance are evidenced. *Globalcaps, Inc. v. PDK Labs, Inc.*, No. 06-22755-CIV, 2007 WL 9706452, at *2 (S.D. Fla. Mar. 29, 2007) ("One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them." (quoting 27 RICHARD A. LORD, WILLISTON ON CONTRACTS § 70:113 (4th ed.))). Furthermore, Forensic Stat was given an initial principal loan amount of $2,000,000. ECF No. [43] ¶ 17. In return, Forensic Stat agreed to repay the principal and interest in monthly installments. ECF No. [42] at 49. This constitutes consideration. And the Note provides for essential terms, including the principal amount of the loan, the installment payments to be made by Forensic Stat, the interest rate and date, the conduct considered events of default, and the remedies available to UBank upon default. *See* ECF Nos. [43] and [43-1] at 49–53.

Furthermore, UBank has shown a breach of the Note. "A 'material breach' of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes 'to the essence of the contract.'" *Oriole Gardens Condos., III v. Indep. Cas. & Sur. Co.*, No. 11-60294-CIV, 2012 WL 718803, at *11 (S.D. Fla. Mar. 6, 2012) (quoting *Covelli Family, LP v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)). Here, Forensic failed to make the regularly scheduled payments due under the Note on July 15, 2024, August 10, 2024, September 10, 2024, and October 10, 2024 and all subsequent months. ECF No. [43] ¶ 62. Even when UBank provided a Notice of Default, Forensic Stat failed to cure the default. *Id.* ¶¶ 63, 64. When UBank accelerated the debt under the Note, Forensic Stat still failed to pay all amounts due and owing under the Note. *Id.* ¶¶ 64, 65. Indeed,

Case No. 25-cv-22594-BLOOM/Elfenbein

Forensic Stat admitted that it failed to make the payments due. ECF No. [43-6] ¶¶ 5, 9. That failure to pay constitutes a material breach. Accordingly, the Court awards summary judgment to UBank on Count I.[2]

**B. Count III: Breach of Guaranty (Sharma) and Count IV: Breach of Guaranty (Gasparini)**

UBank next argues that it is entitled to summary judgment against Sharma and Gasparini on the Guarantees. ECF No. [42] at 6. Specifically, UBank argues that each of the Guarantees constitutes an enforceable contract, and Sharma and Gasparini failed to pay the amounts due and owing to UBank under the Guarantees despite UBank's written demand for repayment. *Id.* at 7–8.

The Court agrees. "Under Florida law, rules applicable to contracts generally apply to guaranty contracts." *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1325 (M.D. Fla. 2002), *aff'd sub nom. Lockheed Martin Corp. v. Galaxis U.S.A. Ltd.*, 88 F. App'x 389 (11th Cir. 2003) (quoting *Warner v. Caldwell*, 354 So.2d 91, 96 (Fla. 3d DCA 1977)). A breach of guaranty claim requires: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega*, 564 F.3d at 1272. "In Florida, the elements of an action for breach of a guaranty arise from a debtor's default and the guarantor's subsequent failure to pay . . .. [T]he creditor has the burden of establishing that all of the conditions precedent to the guarantor's liability have occurred or were performed." *Venus Concept USA Inc. v. Rivera*,

---

[2] The party injured by the breach is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002).

As of April 21, 2026, UBank's damages related to Count I include (i) the principal balance in the amount of $1,931,584.18; (ii) accrued interest in the amount of $345,545.71; (iii) late fees of $37,398.30, and (iv) an appraisal fee in the amount of $6,250.00, for a total amount due and owing of $2,320,778.19. ECF No. [42] at 6. UBank is also owed per diem interest of $536.5512 accruing after April 21, 2026, and attorneys' fees and costs. *Id.* The Court will direct UBank to file a motion and supporting affidavits reflecting the current amounts owed.

No. 0:21-CV-22877, 2022 WL 2651641, at *2 (S.D. Fla. July 8, 2022) (quoting *Bank First v. Guillem*, No. 609-CV-152-ORL-31KRS, 2009 WL 1930190, at *5 (M.D. Fla. June 30, 2009)). "[W]here a written contract unambiguously sets forth an unconditional guaranty, then the guaranty is absolute and the guarantor becomes liable upon non-payment by the principal[.]" *Regions Bank v. Velar*, No. 10-20318-CIV, 2010 WL 11602762, at *4 (S.D. Fla. July 20, 2010) (citation omitted).

The undisputed evidence demonstrates that the Guarantees are valid contracts. Sharma and Gasparini each signed their respective Guaranty, ECF No. [43-1] at 166, 170, and consideration exists both by the terms of the Guarantees, *id.* at 164, 168, and in UBank's subsequent extension of the loan. The Guarantees each set forth the essential terms, including by incorporating the Note, describing UBank's right to enforce and other powers under the Guarantees, and describing Sharma's and Gasparini's waivers of notices and defenses. ECF No. [42-1] at 164–70.

Furthermore, there is no genuine issue of material fact that Sharma and Gasparini breached their respective Guarantees. Forensic Stat executed the Note, obligating it to repay the full indebtedness that the Court previously established is now due and owing. ECF No. [43] ¶¶ 6, 9, 11, 13, 15, 17, 23, 25. Sharma executed Sharma's 2024 Guaranty and Gasparini executed Gasparini's 2024 Guaranty, each guaranteeing to repay the full indebtedness. *Id.* ¶¶ 40–59, 70, 71. Both Guarantees are unconditional and absolute, rendering Sharma and Gasparini liable upon Forensic Stat's non-payment. ECF No. [42-1] at 164–70. Forensic Stat defaulted under the Note by failing to make the required payments and failing to cure its defaults, even when UBank accelerated the debt due under the Note. ECF No. [43] ¶¶ 63–67. And Sharma and Gasparini failed to pay the liquidated amounts that remain due and owing despite UBank's written demand for payment. *Id.* ¶¶ 63–65, 70, 71. Indeed, Sharma and Gasparini each admitted their failure to pay. ECF No. [43-2] at 145:22–25, 146:1–7; ECF No. [43-8] ¶ 8. The Court therefore finds that

summary judgment is warranted as to Counts III and IV.[3]

### C. Count II: Breach of Security Agreement and Count VI: Foreclosure and/or Replevin of Personal Property

Finally, UBank argues that it is entitled to summary judgment on Counts II and VI. ECF No. [42] at 9. Specifically, UBank argues that it is entitled to a finding the Forensic Stat breached the January 2024 Security Agreement, replevin, and judicial foreclosure of the collateral. *Id*. UBank argues that the January 2024 Security Agreement provided that, in the event of a default under the loan, UBank could require Forensic Stat to make available and then take possession of the Collateral. *Id*. at 11. The Note is now in default, so UBank is entitled to final judgment of replevin as to the Collateral. Moreover, because Plaintiff had a perfected security interest in the Personal Property, and Forensic Stat defaulted under the Note, UBank is entitled to foreclose upon its security interest in any Personal Property or Equipment that remains in Forensic Stat's possession after the replevin of the Collateral and Equipment. *Id*. at 12.

The Court agrees. First, the Court finds that Forensic Stat breached the January 2024 Security Agreement. The January 2024 Security Agreement, signed by Forensic Stat and UBank, ECF No. [43-1] at 91, 92, granted UBank a security interest in Collateral owned by Forensic Stat. ECF No. [43-1] at 86–90; ECF No. [43] ¶ 26–37. The Agreement provides that Forensic Stat "shall pay to [UBank] any sum or sums due or which may become due on the Obligations secured hereby in accordance with the terms of such Obligations and the terms of this Security Agreement." ECF

---

[3] As of April 21, 2026, UBank's damages related to Counts III and IV include (i) the principal balance in the amount of $1,931,584.18; (ii) accrued interest in the amount of $345,545.71; (iii) late fees of $37,398.30, and (iv) an appraisal fee in the amount of $6,250.00, for a total amount due and owing of $2,320,778.19. ECF No. [42] at 8. UBank is also owed per diem interest of $536.5512 accruing after April 21, 2026, and attorneys' fees and costs. *Id*. The Court will direct UBank to file a motion and supporting affidavits reflecting the current amounts owed.

No. [43-1] at 86. Thus, Forensic Stat's failures to pay and ultimate default breached the January 2024 Security Agreement.

As to UBank's request for a writ of replevin, the Court similarly finds summary judgment is warranted. Federal Rule of Civil Procedure 64, which governs the seizure of property in connection with a civil action, provides that every remedy available under Florida law for "seizing a person or property to secure satisfaction of the potential judgment" is available in federal court. Fed. R. Civ. P. 64(a). Replevin, specifically, is expressly available as a remedy. Fed. R. Civ. P. 64(b). Under Florida's replevin statute, "[a]ny person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided." Fla. Stat. § 78.01. In order to secure replevin relief, a plaintiff must show "that he was entitled to the possession of the property when the action was brought[.]" *Delco Light Co. v. John Le Roy Hutchinson Properties*, 99 Fla. 410, 128 So. 831, 835 (1930). And when proceeding under § 78.068 specifically, the writ may be issued without notice and a hearing, but the plaintiff must post a bond.[4] *Imports & Exports, Inc. v. Indusparquet Industria E Comercio De Madeiras Ltda.*, Case No. 10–22206–CIV, 2010 WL 4286241 (S.D. Fla. Oct. 25, 2010) (citing *Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc. (ACRS)*, 656 So. 2d 541, 545 (Fla. 5th DCA 1995)). Section 78.068 has three requirements before a pre-judgment writ of replevin may be issued:

---

[4] The Complaint indicates that a writ of replevin is sought pursuant to Florida Statute § 78.068. ECF No. [1] ¶ 59. Indeed, the Complaint alleges that UBank is "prepared to post a bond in the appropriate amount as condition precedent to the granting of pre-judgment relief as sought herein," which implicates the procedures of § 78.068. However, the Motion for Summary Judgment indicates that UBank seeks to proceed under Florida Statute § 78.067. ECF No. [42] at 11. Those are separate and distinct methods of obtaining a pre-judgment writ of replevin. Because no show cause hearing has been requested, the Court presumes that UBank intends to proceed under § 78.068.

> (1) "the grounds relied upon for the issuance of the writ [must] clearly appear from specific facts shown by the verified petition";
> (2) the Court find, in relevant part, "that the defendant has failed to make payment as agreed"; and
> (3) the petitioner "post bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing."

Fla. Stat. § 78.068(1)–(3). Section 78.055 describes that a prejudgment writ of replevin requires a recitation of the following information:

> (1) A description of the claimed property that is sufficient to make possible its identification and a statement, to the best knowledge, information, and belief of the plaintiff of the value of such property and its location.
> (2) A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right. If the plaintiff's interest in such property is based on a written instrument, a copy of said instrument must be attached to the complaint.
> (3) A statement that the property is wrongfully detained by the defendant, the means by which the defendant came into possession thereof, and the cause of such detention according to the best knowledge, information and belief of the plaintiff.
> (4) A statement that the claimed property has not been taken for a tax, assessment, or fine pursuant to law.
> (5) A statement that the property has not been taken under an execution or attachment against the property of the plaintiff or, if so taken, that it is by law exempt from such taking, setting forth a reference to the exemption law relied upon.

Here, it is undisputed that the requirements of § 76.055 are met. The Collateral sought is described with specificity in the Exhibit "J" to the Complaint. ECF No. [1-14]. In connection with the loan application, Forensic Stat represented to UBank that it was in possession of the Equipment. ECF No. [43] ¶ 76. According to Forensic Stat, the Collateral is located at 6444 Beach Boulevard, Jacksonville, Florida at Ace Biomedical Lab's office. *Id.* ¶ 81. UBank's summary judgment evidence further demonstrates that the value of the Collateral is less than what is owed to UBank, the Collateral has not been taken for any tax, assessment, or fine pursuant to law, and the Collateral has not been taken under an execution or attachment. *Id.* ¶ 78–80.

As to § 78.055(3), which overlaps with the requirements of § 78.068, the summary judgment evidence is similarly clear that a writ of replevin is warranted. Per the terms of the

16

January 2024 Security Agreement, UBank has a valid legal interest in the Collateral because the loan to Forensic Stat was secured by the Collateral. ECF No. [43] ¶ 26–37. Indeed, UBank holds a first-priority perfected lien on the Collateral pursuant to the January 2024 Security Agreement. *Id.* ¶ 73.

As previously addressed, Forensic defaulted on the loan and breached the Note with UBank by failing to make the required monthly payments to UBank. The January 2024 Security Agreement expressly contemplates Forensic Stat taking possession of the Collateral in such a case. ECF No. [43] ¶¶ 27, 37; ECF No. [43-1] at 86–90. Thus, as a result of Forensic Stat's default, the Collateral is being wrongfully detained by Forensic Stat, and, under Florida's replevin statute, UBank is entitled to recover the Collateral. The Court therefore enters summary judgment in favor of UBank with respect to Count VI of the Complaint to the extent it seeks a writ of replevin, and UBank shall be entitled to take immediate possession of the Collateral.[5]

Finally, UBank seeks to foreclose upon its security interest in any remaining Personal Property to the extent it remains in Forensic Stat's possession after the replevin of the specifically identified Collateral. ECF No. [42] at 12. Under Florida law, judicial foreclosure is a remedy available to creditors who hold a security interest in property. Fla. Stat. § 679.601(1)(a). To be entitled to judicial foreclosure, the plaintiff must show that it is the holder of a security interest in the collateral and that it is the holder of the note that is secured by such interest. *Lizio v. McCullom*, 36 So.3d 927, 929 (Fla. 4th DCA 2010). The plaintiff must also show that the debtor defaulted on the terms of the note. *PNC Bank, N.A. v. Kimbrough & Assocs., LLC*, No. 6:13-cv-1558-Orl-28KRS, 2015 WL 327533, at *8 (M.D. Fla. Jan. 23, 2015).

---

[5] In connection with the writ of replevin, the Court directs UBank to post an appropriate bond. *See Prestige Rent–A–Car, Inc. v. Advantage Car Rental & Sales, Inc. (ACRS),* 656 So.2d 541, 545 (Fla. 5th DCA 1995); *Comcoa, Inc. v. Coe,* 587 So.2d 474, 476–77 (Fla. 3d DCA 1991).

Here, UBank has satisfied those requirements. The January 2024 Security Agreement grants UBank a security interest in all "personal property, assets and fixtures of [Forensic Stat] of every kind and nature including, without limitation, all accounts, equipment, accessions, fixtures, inventory, chattel paper, instruments, investment property, documents, letter-of-credit rights, deposit accounts and general intangibles, wherever located" and all products and proceeds of those items. ECF No. [43-1] at 93–94. This security interest is properly perfected. ECF No. [43] ¶ 29. As established above, Forensic Stat defaulted on the Note secured by the January 2024 Security Agreement. Therefore, to the extent Personal Property remains in Forensic Stat's possession after the replevin of the Collateral identified in Exhibit "J" to the Complaint, UBank is entitled to foreclose upon its security interest in such Personal Property to the extent necessary to satisfy the debt owed.

Accordingly, summary judgment is granted in UBank's favor as to Count II and Count VI of the Complaint.

### D.  Defendants' Affirmative Defenses

While Defendants did not respond to the Motion for Summary Judgment, the Court addresses the defenses raised in their Answer, ECF No. [17]. Defendants raise thirteen affirmative defenses.

First, Defendants argue UBank fails to state a claim. *Id.* ¶ 63. For the reasons addressed above in the Court's grant of summary judgment, this defense is without merit.

Second, Defendants argue that UBank "has waived any right to enforce the terms of the loan documents by its conduct, including but not limited to accepting late payments without objection." *Id.* ¶ 64. The loan documents at issue provide that no waiver is effective unless made in writing. ECF No. [43] ¶¶ 8, 20, 42, 61. Thus, any reliance by Forensic Stat on a course of dealing is misplaced. Moreover, Forensic Stat's representative admitted that UBank "never made any

representations or promises about future payments or waiving its rights to collect under the loan document." ECF No. [42] at 13.[6] Thus, this affirmative defense fails as a matter of law. *See Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1361–62 (M.D. Fla. 2008), *aff'd*, 306 F. App'x 471 (11th Cir. 2009) ("The mere assertion of an affirmative defense on which the [defendant] has the burden, without supporting evidence, is insufficient to withstand a motion for summary judgment.")

---

[6] Indeed, Forensic Stat was quite unequivocal in its admissions:

> Q: Okay. One second. Did UBank ever state or otherwise indicate that by accepting a late payment, that would somehow affect or in any way limit its rights or remedies under the loan documents?
>
> A: No, sir.
>
> Q: Okay. And how did your understanding of UBank's acceptance of late payments influence your actions or expectations about subsequent payment timing and potential default on the loan documents, if at all? Well, let's start with –that way. Did UBank's acceptance of late payments influence your actions or expectations about the timing for subsequent payments owed under the loan documents and any potential default?
>
> A: No, sir.
>
> . . .
>
> Q: So is it fair to say that in those conversations, UBank didn't make any representations or promises about future payments and whether it was waiving any rights to collect all the payments as expected under the loan documents; is that correct?
>
> A: Yes, sir.
>
> . . .
>
> Q: --UBank never made any – never made any promises to you guys -- to Forensic Stat that it failed to keep, right?
>
> A: No, sir.

ECF No. [43-4] at 74:15–25, 75:1–3, 75:9–13, 76:1–6, 76:25, 77:1-3.

Defendants' third affirmative defense is that of estoppel—namely, that UBank "is estopped from enforcing the terms of the loan documents by its conduct, including but not limited to representations made to Defendants regarding payment terms and modifications." ECF No. [17] ¶ 65. The defense of equitable estoppel is warranted where (1) the plaintiff "makes 'a representation as to a material fact that is contrary to a later-asserted position'; (2) the party claiming estoppel reasonably relied on that representation; and (3) that party detrimentally changed its position because of the representation and its reliance." *Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC*, 162 F.4th 1083, 1105 (11th Cir. 2025) (quoting *Progressive Exp. Ins. Co. v. Camillo*, 80 So. 3d 394, 401–02 (Fla. 4th DCA 2012)). The reasons for disposing of the waiver defense above apply with equal force here. The loan documents expressly stated that modifications could only be in writing, rendering unreasonable any reliance by Defendants on purported representations to the contrary. And, as described in footnote 6, Defendants admitted that no misleading representations were made. Most significantly, Defendants fail to provide any facts supporting the application of estoppel. Thus, this affirmative defense fails.

Fourth, Defendants assert that UBank failed to provide the requisite notice required by the loan documents. However, the record evidence does not support this affirmative defense. The loan documents waived any notice requirements, ECF No. [43] ¶ 8, 21, 42. Moreover, on October 30, 2024, UBank did provide a Notice of Default "identifying the events of default under the loan documents and demanding cure." *Id.* ¶ 63. Indeed, each Defendant admitted that they received the Notice of Default. ECF Nos. [43-4] at 89:3–5; [43-7] ¶ 7; [43-8] ¶ 7. Thus, this affirmative defense fails.

Fifth, Defendants argue the loan documents are unenforceable due to a failure of consideration. ECF No. [17] ¶ 67. This argument fails, too. Forensic Stat admitted that it received

$2,000,000 in connection with the Note. ECF No. [43-6] ¶ 1. Moreover, Sharma and Gasparini agreed there was adequate consideration in the Guarantees themselves. ECF No. [43-1] at 164, 168. Thus, this affirmative defense fails as well.

Sixth, Defendants argue that the parties modified the terms of the loan documents through their course of dealing. ECF No. [17] ¶ 68. This argument fails for the same reasons the waiver and estoppel arguments fail. Modification was only permitted in writing, ECF No. [43] ¶¶ 8, 20, 42, 61, and Forensic Stat admitted that no representations were made regarding changes to the terms relevant here—that is, timing of payments. ECF No. [43-4] at 74:15–25, 75:1–3, 75:9–13, 76:1–6, 76:25, 77:1-3. Thus, this affirmative defense also fails.

Seventh, Defendants argue that some or all of UBank's claims are barred by the Statute of Frauds. ECF No. [17] ¶ 69. Florida's Statute of Frauds requires that certain contracts be memorialized in a writing signed by the party to be charged, including promises to pay another's debts. Fla. Stat. § 725.01. Florida courts take an expansive view as to what qualifies as a signed writing that complies with the Statute of Frauds. *See Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 3d DCA 1999) ("To satisfy the statute, a note or memorandum may take almost any possible form."). Here, the Court has already established that such writings exist—that is, the Note, Guarantees, and January 2024 Security Agreement, *i.e.*, the agreements UBank seeks to enforce, all constitute valid contracts. Thus, the Statute of Frauds does not apply, and this affirmative defense fails.

Eighth, Defendants argue that they are entitled to an offset against any amounts owed to UBank. ECF No. [17] ¶ 70. No record evidence supports this affirmative defense. Moreover, Forensic Stat's representative testified that it "does not have any legal defenses or legal excuses for [its] failure to honor [its] obligations[.]" ECF No. [43-5] at 14:8–12. Sharma testified to the

same effect. ECF No. [43-2] at 82:22–25, 83:1–2. Forensic Stat's representative testified that UBank does not owe any money to Forensic Stat or the Guarantors that would be offset against the money Forensic Stat and the Guarantors owe to UBank. *Id.* at 24:23–25 and 25:1–2. Gasparini testified much the same. ECF No. [43-3] at 97:17–25, 98:1. Thus, this affirmative defense fails.[7]

Tenth, Defendants argue that the description of the Collateral in the January 2024 Security Agreement and UCC-1 is insufficient. ECF No. [17] ¶ 72. However, Gasparini testified that there was no factual basis underpinning this defense. ECF No. [43-3] at 98:2–16. Moreover, pursuant to Florida Statute § 679.5041, "[a] financing statement sufficiently indicates the collateral that it covers if the financing statement provides . . . [a]n indication that the financing statement covers all assets or personal property." Here, the UCC-1 did precisely that, explaining that it covered "[a]ll present and future right, title and interest in and to any and all personal property of [Forensic Stat.]" ECF No. [43-1] at 68.

As to the January 2024 Security Agreement's description of the Collateral, "[m]any courts have held that a description of collateral is sufficient when the agreement covers all of a certain type or types of assets." *Am. Rest. Supply Co. v. Wilson*, 371 So. 2d 489, 490 (Fla. 1st DCA 1979) (collecting cases). And the January 2024 Security Agreement does this, listing out that it covers "[a]ll equipment and machinery;" "[a]ll fixtures and articles of property . . . used or adapted for use in the Operation of Debtor's business;" "[a]ll accounts, accounts receivable, contract rights, leases, and any other rights of Debtor to payment for goods sold or leased or for services rendered" and other items; "[a]ll general intangibles;" "[a]ll instruments, documents, chattel paper, goods, moneys, securities, drafts, and other property of Debtor now in possession of;" "[a]ll electronic

---

[7] Defendants' ninth and twelfth affirmative defenses are related to Count V – Fraudulent Transfer of Collateral. Since UBank did not seek summary judgment as to Count V, the Court does not address these arguments.

chattel paper, investment property, deposit accounts, and letter of credit rights;" and "[a]ll other personal property, assets and fixtures of Debtor of every kind and nature including, without limitation, all accounts, equipment, accessions, fixtures, inventory, chattel paper, instruments, investment property, documents, letter-of-credit rights, deposit accounts and general intangibles, wherever located." ECF No. [43-1] at 93–94.

A survey of the relevant case law demonstrates that the description of the Collateral is patently sufficient. *See Richardson v. Myers*, 143 So. 157, 158–59 (1932) (deeming sufficient a security interest in "all the goods, chattels, fixtures and equipment" of the lessee because the items "may with reasonable certainty be ascertained by the description given"); *Crews v. First Union Nat' l Bank of Fla. (In re Michelle's Hallmark Cards & Gifts, Inc.*), 219 B.R. 316, 318–20 (Bankr. M.D. Fla. 1998) (deeming "sufficient to fulfill the reasonable identification standard" a security interest in "furniture, fixtures, equipment and inventory"); *Pizzano v. Direct Capital Corp. (In re Pizzano)*, 439 B.R. 445, 448 (Bankr. W.D. Mich. 2010) (enforcing a security agreement that described the collateral as "goods"); *In re Ziluck*, 139 B.R. 44, 46 (S.D. Fla. 1992) (deeming sufficient a security interest in "all merchandise charged to your account"); *In re Sojack Miller, Inc.*, 93 B.R. 768, 769 (Bankr. M.D. Fla. 1988) (deeming sufficient a security interest in "all of the Debtor's inventory, equipment, fixtures, name (Warren's Pharmacy) and goodwill.").

Eleventh, Defendants argue UBank "has failed to comply with all the conditions precedent in section 78.055 and its related provisions contained in Chapter 78, Florida Statutes, to include sections 78.065 and 78.068, Florida Statutes." ECF No. [17] ¶ 73. But the Court previously addressed UBank's compliance with the conditions precedent for a writ of replevin to issue, finding that all had been satisfied, so this affirmative defense is without merit.

Case No. 25-cv-22594-BLOOM/Elfenbein

Thirteenth, Defendants argued that UBank had not produced copies of original documents signed by the parties and, accordingly, did not state a cause of action. UBank has since produced signed copies of all relevant loan documents. *See* ECF [24-1] to [24-10]. As such, this affirmative defense is also without merit.

### E. Attorneys' Fees

Finally, UBank seeks all attorneys' fees and costs. *See* ECF No. [1]. The loan documents at issue—most critically, the Note and the Guarantees—contemplate the recovery of attorneys' fees and costs incurred by UBank.  ECF No. [43] ¶ 8, 42; ECF No. [43-1] at 164, 168. The Court therefore finds an award of reasonable attorneys' fees and costs warranted.

### F. Joint and Several Liability

Because Sharma and Gasparini "absolutely and unconditionally" guaranteed performance under the Note, ECF No. [43-1] at 164, 168, the Court finds that they are jointly and severally liable for any deficiency owed thereunder, in addition to Forensic Stat. *Ocean Bank v. M/Y ANDREA DEL MAR*, No. 1:16-CV-21512-JLK, 2017 WL 7794596, at *2 (S.D. Fla. Aug. 18, 2017) (citation omitted); *see also First Fla. Bank, N.A. v. All World, Inc.*, 588 So. 2d 284, 286 (Fla. 1st DCA 1991).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. UBank's Motion for Summary Judgment, **ECF No. [42]**, is **GRANTED**.

2. Summary Judgment is granted in favor of UBank and against Defendants as to **COUNTS I, II, III, IV, and VI**.

3. **On or before May 22, 2026**, Plaintiff shall file an appropriate motion and supporting affidavits reflecting the amount of fees to be awarded. Following

this, pursuant to Federal Rule of Civil Procedure 58, judgment will be entered in accordance with the foregoing by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 15, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record